C. R. GRIER, ADMINISTRATOR, v. TODD GRIER AND C. L.
ETHEREDGE.

(Filed 15 December, 1926.)

1. **Master and Servant—Employer and Employee—Principal and Agent—
Negligence—Scope of Employment.**

The test of the liability of the master for the negligent act of the ser-
vant causing damages to another, under the implied scope of the agent's
authority in such matters, primarily depends upon whether the act com-
plained of falls within the servant's obligation of service, or whether
the servant was acting solely for his own purpose unconnected with his
master's service.

2. **Same—Automobiles—Dealers—Intoxicating Liquors.**

Where the servant becomes drunk when driving an automobile for the
business of his master, when the latter was unaware of the fact that his
servant was addicted to drink, and had no reason to anticipate it on the
occasion complained of, the mere fact that he permitted his servant to
keep a car in his possession, as the nature of the business appeared to
him to require, does not render him liable for an injury inflicted on
another by his servant when under the influence of drink, upon an oc-
casion on which the servant, without the knowledge of his master, took
the car entirely for his own purpose or pleasure, and which the master
had not expressly or impliedly authorized.

3. **Same—Sales Agents.**

Where a dealer in automobiles designates from time to time automo-
biles to be used by his salesman for demonstration purposes alone, per-
mitting him to keep the car at his home, and the servant takes the car
out on Sunday for his own purposes, and while intoxicated runs upon
and injures another person, and there is no evidence that the owner
knew or was reasonably aware that his salesman drank intoxicating
liquor, or would so use the car: *Held*, the owner is not liable for the
damages thus caused, the same not being within the scope of the ser-
vant's duties, or the purposes of his employment.

4. **Automobiles—Traffic Rules—Parking Laws.**

It is not a violation of a parking law for a driver of an automobile
to stop his car, keeping the motor running, long enough for the an-
ticipated passing of another car' speeding behind him to pass him on the
highway.

CIVIL ACTION, tried before *Harding, J.,* and a jury, at April Term,
1926, of MECKLENBURG.

The plaintiff is administrator of Mary Grier, who was killed on 8
September, 1924, on East Trade Street in the city of Charlotte; plain-
tiff's intestate was killed by being struck by an automobile driven by
the defendant, Todd Grier.

The evidence tended to show that at the time plaintiff's intestate
was struck and killed by Todd Grier that he was drunk and was oper-

ating the car in a careless and negligent manner. Indeed, he does appeal from the judgment rendered. At the time of the injury, Todd Grier was employed by the defendant, Etheredge, who was engaged in the automobile business and trading under the name of Etheredge Motor Sales Co. The defendant, Grier, had been employed by said Etheredge a little over a year as an automobile salesman. He was working on a commission basis and was paid on the actual cars sold. If no cars were sold by said salesman he received no compensation. The defendant, Etheredge, furnished his said salesman a car "for demonstration purposes." The car used by the defendant, Todd Grier, at the time of the death of plaintiff's intestate, was one which he had habitually driven as a demonstration car.

The defendant, Grier, testified: "I would take a new car and drive it for a while and maybe I would sell it. I would get another car and drive it and sell it, and that is the way with this car I was driving. I had been driving this particular car which I was driving when I killed this old woman three or four months. I had been using it and going back and forth in it from the Etheredge Motor Sales Company place of business to my home, and also in going anywhere I wanted to go trying to make sales. I used it for hunting up prospects. It was not the only car I had to use. . . . I had friends whose car I used, but I would also use the company's car for any purpose. I kept the demonstration car at night at home in the garage at the place where I roomed on Torrence Street. . . . I had to ask permission first to take a demonstration car out. After a car had been assigned to me by Mr. Etheredge or Mr. Stone for a demonstration car I never had to ask permission after that to take that car out of the place of business. I drove it when and where I pleased."

The evidence was to the effect that on Saturday night the defendant, Todd Grier, left the place of business of his codefendant, Etheredge, at closing time, taking the demonstration car with him to his home. On Sunday morning at about nine o'clock the defendant, Todd Grier, took said demonstration car to take his friend, Dewey Hampton, from Charlotte to his home at Taylorsville, about thirty miles beyond Statesville.

The defendant, Todd Grier, testified: "When I started out with Dewey Hampton that Sunday morning I did not have any idea at all of getting any liquor at Dewey's house. . . . I went to take Dewey home." In a short while after arriving at Hampton's home some whiskey appeared and the defendant, Todd Grier, began drinking freely and in addition purchased a quantity of whiskey to take back with him to Charlotte in the car. The defendant was very much under the influence of whiskey on his return trip and testified: "When I came to

Monday morning I was in my car. I had my tire repaired just before dark Sunday night. When I came to myself Monday morning and found myself in my car, I came on to Charlotte. . . . If I went to the place of business of Etheredge Motor Sales Co. after leaving the tire station I did not know it. When I got to the tire station I was drunk. . . . With reference to where I started after leaving that tire station, all I remember was coming out of the tire station, and where I went I don't know. . . . I have no recollection of striking that colored woman. . . . I did not sell any automobiles on the trip to Statesville. I did not take any orders. I did not try to get any orders. The territory within which I ordinarily solicit orders while I was working for Mr. Etheredge was in the city of Charlotte, Mecklenburg County. . . . I had no prospect in Statesville or Taylorsville or up in that locality."

The defendant further testified: "If I had run up on a man who wanted to buy a car I would have taken the order," and, further, "Nobody offered to buy. (Q.) But on the trip up before you got full of liquor, if somebody had offered to buy a car from you, you would have taken the order, wouldn't you? (A.) For Monday, yes, sir."

There was evidence tending to show that during the trip the defendant, Todd Grier, took the Etheredge Motor Sales Company tag off the car and placed another tag thereon. There was no evidence tending to show that Grier was an incompetent driver or that he had ever been drunk or under the influence of whiskey to the knowledge of his employer.

The codefendant, Etheredge, testified that he did not know that Grier was going to make the trip to Taylorsville, and would have objected if he had known it; and, further, that he did not know that his codefendant and employee drank prior to the killing of plaintiff's intestate.

The cause was submitted to a jury, and there was a verdict against both defendants.

The defendant, Etheredge, appealed, contending that he was not liable for the acts of his codefendant, Todd Grier, at the time of the killing of plaintiff's intestate.

*Cansler & Cansler and Henderson & Meyer for plaintiff.*
*C. H. Gover for defendant.*

BROGDEN, J. The question is this: Is an employer of an automobile salesman who furnishes the salesman a car for demonstration purposes and permits the salesman to keep the car at night, liable for the negligent acts of said salesman in operating said car?

The answer to this question depends upon whether or not the salesman, at the time of committing the negligent act, was acting within the "scope of his employment." One of the leading cases in this State on the question of "scope of employment" is *Sawyer v. R. R.,* 142 N. C., p. 1. *Justice Hoke,* quoting from Wood on Master and Servant, says: "The test of liability in all cases depends upon the question whether the injury was committed by the authority of the master, expressly conferred or fairly implied from the nature of the employment and the duties incident to it. The simple test is whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof and were such as may fairly be said to have been authorized by him. By 'authorized' is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to him by the master, even though in opposition to his express and positive orders."

Again, in *Marlowe v. Bland,* 154 N. C., 140, it is said: "An act is within the scope of the servant's employment where necessary to accomplish the purpose of his employment, and intended for that purpose, although in excess of the powers actually conferred on the servant by the master. The purpose of the act rather than its method of performance is the test of the scope of employment. But the act cannot be said to be within the scope of the employment merely because done with intent to benefit or serve the master, not merely because the injuries complained of would not have been committed without the facilities afforded by the servant's relations to his master, nor because the servant supposed that he possessed authority to do the act in question."

Again, in *Dover v. Mfg. Co.,* 157 N. C., 324, it is said: "In an action for tort, in the nature of an action on the case, the master is not responsible if the wrong done by the servant is done without his authority and not for the purpose of executing his orders or doing his work. So that, if the servant wholly for a purpose of his own, disregarding the object for which he is employed, and not intending by his act to execute it, does an injury to another, not within the scope of his employment, the master is not liable." And again, in the same case, *Justice Brown* declares: "Beyond the scope of his employment the servant is as much a stranger to the master as any third person, and his act in that case cannot be regarded as the act of the master."

In *Bilyeu v. Beck,* 178 N. C., 481, a judgment of nonsuit was upheld, *Justice Allen* observing: "There is no evidence that the daughter was on any mission or performing any service for the defendant, her mother."

Under the decisions, therefore, an act, to fall within the "scope of employment":

1. Must be done in furtherance of the master's business or incident to the performance of the duties entrusted to the servant by the master.

2. Must be done in the prosecution of the master's business or in executing his orders or doing his work.

3. Must be connected with some mission or the performance of some service for the principal.

4. Where the act is necessary to accomplish the purpose of the employment and intended for that purpose.

The general principles of law governing such cases are well established. The chief difficulty encountered is in applying these general principles to the facts of particular cases.

In the case at bar the defendant, Todd Grier, as salesman, had wide discretion as to the use of the car with which the plaintiff's intestate was killed. But liability in such cases is not ordinarily imposed upon the employer, by reason of the extent of the authority of the agent, but rather upon the purpose of the act and whether it was done in the furtherance of the employer's business or was reasonably incident to the discharge of the duties entrusted to the employee.

Tested by the established principles of liability, is the defendant, Etheredge, liable for the negligent acts of the defendant, Grier, under the facts disclosed in this record?

The defendant, Grier, went to Taylorsville to carry a friend on Sunday morning. He began to drink heavily and became intoxicated. He purchased whiskey which he was taking back to Charlotte with him. Upon arriving in Charlotte, he did not return or attempt to return to the place of business of his employer, but was on his way home when in a drunken condition he negligently ran over and killed plaintiff's intestate. He did not solicit or attempt to solicit orders during the trip. He had no such purpose in mind. A trip on Sunday from Charlotte to Taylorsville to take a friend to his home was in nowise incident to the performance of his duties as a salesman, and the record does not disclose any act whatever in furtherance of the employer's business or intended for any such purpose, but, upon the other hand, the whole undertaking was one designed for the personal purposes of the agent.

The case of *Reich v. Cone*, 180 N. C., 267, is directly in point. In that case *Clark, C. J.,* says: "When a motor car is used by one to whom it is loaned for his own purpose, no liability attaches to the lender unless, possibly, when the lender knew that the borrower was incompetent, and that injury might occur." In our case, there was no evidence that the defendant, Etheredge, knew that Todd Grier was an incompetent driver or that he drank liquor.

The same principle is stated in Huddy on Automobiles, 7 ed., sec. 763: "One having possession of an automobile as an agent of the owner for the purpose of selling the same, has implied authority, unless forbidden, to run the machine to demonstrate it to a proposed purchaser. If guilty of negligence in so running it, the owner may be liable for injuries proximately resulting from such negligence. The agent, however, cannot use the car for his own private purposes, and his negligence when so using the machine cannot be chargeable to the owner."

In *Wright v. Motor Car Co.* (Utah), 177 Pac., 237, the general manager of the defendant took a demonstration car owned by the defendant and went with a friend to see a young lady to take her to a dance. The Court held that there was no liability imposed upon the owner of the car for the negligence of the operators for the reason that the car was being used for purely social purposes." To the same effect is *Slater v. Advance Thrasher Co.* (Minn.), 107 N. W., 133.

The plaintiff relies upon *Freeman v. Dalton,* 183 N. C., 538. In that case the agent was actually engaged in operating the car as an emergency car for carrying passengers. The original record discloses that there was testimony to the effect that the defendant, Dalton, employed the agent to drive the jitney and paid him for his services. So that there was evidence that the defendant was the owner of the car and that it was being operated for business purposes.

Upon a careful perusal of the record and an examination of the authorities, we are of the opinion, and so hold, that the motion of nonsuit made by the defendant, Etheredge, at the conclusion of all the evidence, should have been allowed.

