EARL FERGUSON, BY HIS NEXT FRIEND, J. F. FERGUSON, v. REX
SPINNING COMPANY.

(Filed 13 February, 1929.)

**Master and Servant—Master's Liability for Injuries to Third Persons—
Scope of Employment.**

> Where a servant by his own independent act injures another servant of
> the employer working under him, whether wilfully or otherwise, entirely
> beyond the scope of his employment, and there is nothing to show that the
> master had actual or implied knowledge of any viciousness or recklessness
> of the employee committing the act, the master is not liable in damages as
> a matter of law for the injury thus inflicted.

APPEAL by defendant from *Townsend, Special Judge,* and a jury, at
May Special Term, 1928, of GASTON. Reversed.

This is an action for actionable negligence brought by J. F. Ferguson,
next friend of Earl Ferguson, his son, against defendant.

Earl Ferguson was a "doffer boy," fourteen years of age, working in
the twister room of defendant's cotton mill, under Whitey Barnes, a
second-hand who was over him. He was performing his duties in a
place he had a right to be. The company furnished a hose with com-
pressed air to Barnes, the force of which was 110 pounds and sufficient
to blow grease and lint off of frames in the cotton mill.

Earl Ferguson testified: "Barnes slipped up behind me and grabbed
my arm and raised me clean off the floor with the hose pipe. He grabbed
my left arm, put the hose pipe to me with his other arm and raised me
off the floor. I felt the air going in me, and I grabbed his arm, and I
commenced sinking to the floor, and that was all I knew until I woke
up on the spare floor."

The issues submitted to the jury and their answers thereto were as
follows:

"1. Was the minor plaintiff injured by reason of the negligence of the
defendant, as alleged in the complaint? Answer: Yes.

"2. Was the section hand, Whitey Barnes, at the time of the injuries
inflicted on the plaintiff, acting within the scope of his employment?
Answer: Yes.

"3. What damage, if any, is plaintiff entitled to recover of the de-
fendant? Answer: $1,700."

Defendant introduced no evidence, and at the close of plaintiff's evi-
dence made a motion for judgment as in case of nonsuit. C. S., 567.
The motion was refused, defendant excepted and assigned error. De-
fendant also submitted the following prayer for instruction: "If you

believe the evidence, as testified to by the witnesses, you will answer the second issue No." This was refused, defendant excepted and assigned error, and appealed to the Supreme Court.

*Carpenter & Carpenter for plaintiff.*
*J. Laurence Jones and Geo. B. Mason for defendant.*

CLARKSON, J. The material question for our determination was whether Whitey Barnes, under the facts and circumstances of this case, was acting within the "scope of his employment?" We cannot so hold.

The law, as stated in 18 R. C. L., p. 795-6, is as follows: "Acts impliedly authorized or such as are within the scope of the employment—that is, wrongs for which the employer may be held accountable—are not susceptible of precise or even very helpful definition by any phrase or short form of expression. Each case must be determined with a view to the surrounding facts and circumstances—the character of the employment and the nature of the wrongful act. Whether the act was or was not such as to be within the employment's scope is ordinarily one of fact for the jury's determination. *But if the departure from the employer's business is of a marked and decided character the decision of the question may be within the province of the court. 'Where a servant steps aside from the master's business and does an act not connected with the business, which is hurtful to another, manifestly the master is not liable for such act, for the reason that having left his employer's business, the relation of master and servant did not exist as to the wrongful act.* (Italics ours.) But if the servant continues about the business of the employer, adopts methods which he deems necessary, expedient or convenient, and the methods adopted prove hurtful to others, the employer is liable. . . . (p. 800). The rule, however, established by the later authorities does not make the responsibility of the employer depend on the question whether an injury inflicted by the employee was wilfull and intentional or unintentional, but upon the question whether the employee when he did the wrong acted in the prosecution of the employer's business, and within the scope of his authority, or had stepped aside from that business, and done an individual wrong. These decisions assert that the employer should be held responsible for the acts of his employee, when done in the course of his employment with a view to the furtherance of his employer's business, and not for a purpose personal to himself, whether the same be done wilfully and intentionally, or merely carelessly and heedlessly.' "

The injury was not committed when Barnes was using the hose for the purpose for which it was furnished; nor was the boy injured in the negligent use of the hose by Barnes, but he stepped aside and deliber-

ately and wilfully injured the little "doffer boy." There is no evidence that defendant company knew or had reasonable ground to believe that Barnes was incompetent or had vicious propensities. In this particular as to the conduct of Barnes, he was not on duty nor in the furtherance of his employment, and used excess, but he was out of the scope of his employment.

Speaking to the subject in *Elmore v. R. R.,* 189 N. C., at p. 672, it is said: "In *Ange v. Woodmen,* 173 N. C., p. 35, *Hoke, J.,* citing a wealth of authorities, says: 'It is now fully established that corporations may be held liable for negligent and malicious torts, and that responsibility will be imputed whenever such wrongs are committed by their employees, and agents, in the course of their employment, and within its scope.' *Munick v. Durham,* 181 N. C., 193. In *Cook v. R. R.,* 128 N. C., 336, it was said: 'Acting within the general scope of his employment means while on duty, and not that the servant was authorized to do such acts.' *Gallop v. Clark,* 188 N. C., 186; *Sawyer v. Gilmers, Inc., ante,* 7; *Southwell v. R. R., ante,* 417; *Seward v. R. R.,* 159 N. C., 241; *Cooper v. R. R.,* 170 N. C., 492; *Cotton v. Fisheries Products Co., supra* (177 N. C.), 59; *Jenkins v. Sou. R. R.* (S. C.), 125, S. E. Rep., 912."

We do not see how defendant company could reasonably anticipate that Barnes would go out of his way and commit the assault on the little boy.

In *Rivenbark v. Hines,* 180 N. C., at p. 243, it is said: "He (Walton) had quit work to go to dinner, and was blowing off the dust from his clothing as was usual among the employees. The boy, Rivenbark, was familiar with this process, and asked Walton to blow the dust off his clothes. Walton did this, and when the boy turned his back Walton forcibly seized him and wantonly and recklessly blew the air through the boy's rectum into his body and killed him. Upon these facts Walton was guilty of manslaughter, and had he not died, doubtless he would have been punished for it. In no view can he be said to have been acting within the scope of his employment or in the service of the defendant. The case differs very materially from *Robinson v. Mfg. Co.,* 165 N. C., 495."

The humanities of the case are appealing, but we cannot be led to take unjustly from one and give to another. Barnes was guilty of a cruel assault and liable in damages to plaintiff, but we cannot hold the defendant liable for his unauthorized conduct beyond and outside of the scope of the employment. Those who in the years that have gone by enacted a wise oath "Will administer justice without respect to persons and do equal right to the poor and the rich."

We have heard the argument of plaintiff and read the well prepared brief and have carefully considered the case, but we are of the opinion that the judgment of nonsuit should have been sustained and the prayer of instruction given.

For the reasons given the judgment of the court below is

Reversed.