MARY W. WILKIE v. H. B. STANCIL AND GILMERS, INCORPORATED.

(Filed 27 March, 1929.)

**Master and Servant—Master's Liability for Injuries to Third Persons—Scope of Employment.**

> The liability of the master in damages for the negligent acts of the servant extends only to such acts that occur within the scope of the servant's duties or in furtherance thereof, and where the evidence tends only to show that the injury in suit was caused by the servant in going in his automobile to his master's store on a holiday to light the lights therein, without further duty to perform on that occasion, a motion for judgment as of nonsuit thereon is properly granted, and the servant's intention of performing an insignificant, gratuitous service when he reached the store, not requested or required of him by the master, does not vary this result.

APPEAL by plaintiff from *Grady, J.*, at January Special Term, 1929, of WAKE. No error.

On 25 December, 1926, at 6 p.m., the defendant, Stancil, while driving his automobile from his home on Salisbury Street to the store of Gilmers, Inc., ran over the plaintiff at the intersection of Edenton and Halifax streets and injured her. She brought suit against both defendants, alleging that she had been injured by the negligence of Stancil, and that he was the employee and servant of Gilmers acting within the

scope of his employment at the time of the injury. Upon issues joined by the pleadings the jury found that the plaintiff had been injured by the negligence of Stancil, but not by the negligence of Gilmers, and that the plaintiff had not by her own negligence contributed to her injury, and awarded damages in answer to the fourth issue. Judgment was rendered against Stancil only, and the plaintiff excepted and appealed.

*F. T. Bennett and Bailey & Weatherspoon for plaintiff.*
*Biggs & Broughton for Gilmers, Incorporated.*

ADAMS, J. His Honor instructed the jury if they believed the evidence and found the facts to be as stated by Stancil, the only witness on the subject, to find in response to the second issue that the plaintiff had not been injured by the negligence of Gilmers. The question is whether there was error in this instruction.

In paragraph ten of the complaint it was alleged: "That Gilmers, Incorporated, employed the defendant, H. B. Stancil, as superintendent of its store building, and it was contemplated at the time of his said employment and under instructions given said Stancil by the manager of said store, that the said Stancil should go to said store on holidays about night time for the purpose of turning on the lights for the benefit and protection of the defendant, Gilmers, Incorporated; that 25 December, 1926, the time complained of, was a holiday; that the place of business of Gilmers, Incorporated, had not been opened that day and that H. B. Stancil was at the time complained of herein on his way to the store for the purposes aforesaid."

This was admitted. It was also admitted that no delivery of goods for Gilmers was made by Stancil or any other person on 25 December. It was a legal holiday and the store was closed. When Stancil went to the store early in the morning to turn off the lights he made search for a toy which had not been delivered to the purchaser, and failing to get it tried to find a man named Wingo, who operated the Merchants Delivery Company, and who should have delivered it; but he did not get in communication with him. Stancil went home about noon and remained there with his family until about six o'clock. He owned a car which he used regularly in going to and from his work. Under instructions he used it in times of emergency for the delivery of goods; but he had not been instructed to open the store at Christmas to deliver the toy. The direct inquiry is whether at the time of the alleged injury he was engaged in the prosecution of his employer's business so as to make the employer liable for his negligence.

The test is whether Stancil at the time of the injury was acting within the scope of his employment—whether he was engaged in the further-

ance of his employer's business. *Sawyer v. R. R.,* 142 N. C., 1; *Butler v. Mfg. Co.,* 182 N. C., 547; *Gallop v. Clark,* 188 N. C., 186. There is no evidence that Gilmers retained the right to say how he should travel in going to and from the store. He had bought the car for "his own use in going backward and forward." Gilmers had no interest in it and no control over it except "in times of emergency when used under Cooper's instructions."

It was held in *Linville v. Nissen,* 162 N. C., 95, 101, that the doctrine of *respondeat* superior applies only when the relation of employer and employee "is shown to exist between the wrongdoer and the person sought to be charged for the result of the wrong *at the time and in respect* to the transaction out of which the injury arose." This familiar principle which has been recently applied in a number of cases does not require at this time a full or elaborate discussion. *Bilyeu v. Beck,* 178 N. C., 481; *Reich v. Cone,* 180 N. C., 267; *Grier v. Grier,* 192 N. C., 760; *Peters v. Tea Co.,* 194 N. C., 172.

Upon the admitted facts Stancil was not engaged in the furtherance of his master's business at the time of the injury. His sole duty was to turn on the lights; this duty could not be performed by him before he arrived at the store. Upon his arrival there he was to enter upon the discharge of the specific duty he was to perform on holidays, and his mode of traveling was his personal affair. To permit a recovery against Gilmers under these circumstances would be to enlarge the rule of *respondeat* superior to such an extent as to make the master liable for every negligent act his servant might commit while going to or from his place of work, though transported in a vehicle of his own selection over which the master had no control and in which he had no interest.

We are not inadvertent to Stancil's saying that as he came down the street he "was intending" to make a search in the building for the lost package and "was intending" to look for Wingo; but in fact he searched neither for the package nor for Wingo, and his purpose or intention did not determine the legal relation which at that time existed between him and his employer. He testified, "I would not have gone back to Wingo's that night, and I might have tried to straighten out those packages if I had not had this trouble." But at the time the injury occurred he had not found the package and was not engaged in delivering it.

The cases cited by the appellant which hold that the master may be liable if his servant's automobile is habitually used in the master's business, we think, have no application to the facts disclosed by Stancil's testimony; the car was used in the service of Gilmers, not habitually, but on occasions of necessity. A comparison of the facts in each of these cases with the facts in the present case will readily show wherein they may be distinguished.

The appellant's brief contains this statement: "The weight of authority holds that where one is returning to his employer's place of business to resume his duties he has returned to the pursuit of his master's business from the time he begins the journey to the master's place of business." This statement is too broad to be strictly accurate. It must be examined in the light of the cases cited in its support. These cases show that the chauffeur was engaged in the operation of the master's car with his permission, if not under his positive direction, and are based upon facts entirely at variance with those disclosed by the evidence here.

We should profit little by reviewing and distinguishing the cited decisions of other courts, but we may refer to the two decisions of this Court on which the appellant seems to rely. In *Adams v. Foy,* 176 N. C., 695, it was shown that Workman, an employee of Foy & Shemwell, took from their garage in Lexington a car owned by one McIlvaine, drove it to Thomasville, and on the return caused the injury by a collision. When the plaintiff went to see Foy & Shemwell in reference to the payment of damages, Shemwell said that "he was not responsible for the troubles Workman got into while he was out." A motion for nonsuit was denied, the court holding that the phrase "while he was out" was susceptible of more than one construction and was to be determined by a jury. *Misenheimer v. Hayman,* 195 N. C., 613, raised the questions whether the truck was the property of the defendant and whether the driver was engaged in the prosecution of the defendant's business at the time of the injury. The truck bore the name of the defendant or the defendant's meat market and the defendant was engaged in the business of selling and delivering meat from his market. It was decided that these circumstances were evidence for the jury to consider.

In our case the evidence may reasonably be given only one construction: at the time of the injury Stancil was not engaged in the prosecution of his employer's business. Neither of the cases just referred to is inconsistent with the defendant's position. We find

No error.