STACY ADAMS COTTON, by CORNELIUS C. COTTON, NEXT FRIEND AND
    FATHER, v. CAROLINA TRUCK TRANSPORTATION COMPANY AND
    GEORGE FOY.
                        (Filed 20 November, 1929.)

**Master and Servant D b—Master is not liable for injuries to third person
    by servant acting outside scope of employment.**

> One injured while riding on the running board of a truck as an invitee
> of the driver, an employee of a transportation company, may not hold the
> transportation company liable under the doctrine of *respondeat superior*
> for an injury resulting from the negligence of the driver in the absence of
> allegations and evidence that the driver was acting within the scope of
> his employment in giving the invitation, or had authority expressed
> or implied to invite or permit persons to ride on the defendant's truck, or
> that the employer had knowledge or acquiesced in his so doing on former
> occasions, and where the evidence fails to disclose such authority a judg-
> ment as of nonsuit is proper.

APPEAL by defendant from *Daniels, J.,* at February Term, 1929, of
CRAVEN.

Civil action to recover damages for an alleged negligent injury sus-
tained by plaintiff when he fell or was thrown from a truck.

The evidence for the plaintiff tends to show that on 23 October, 1926,
George Foy, who prior and subsequent to that time worked for the cor-
porate defendant as a truck driver, was operating a truck in the city of
New Bern, through a section principally inhabited by the colored race.
The truck in question was a Mack Truck, such as the corporate defend-
ant uses, with the name "Carolina Truck Transportation Company" ap-
pearing on the side. One witness testified that it had the words "Caro-
lina Instruction Company" painted on the side of the cab. On seeing
the plaintiff, a colored boy eleven years of age, and his companion,
James Wilson, the driver stopped and picked them up for a ride. Wilson
got on the inside of the truck and the plaintiff stood on the outside, on
the running board, next to the driver's seat.

It is further in evidence that George Foy had allowed the plaintiff to
ride with him seven or eight times before, in the same neighborhood,
and on the same truck which he was driving that day. As the truck
turned the corner of Biddle and Rose streets, two unimproved streets,
narrow and sandy, at a rapid rate of speed, the plaintiff's foot slipped,
and not being able to hold on with his hands, or regain his footing,
because of the speed of the truck, he fell to the ground and was run
over by the rear wheel of the truck, sustaining serious and permanent
injuries. The plaintiff testified: "The car was going fast when he
turned the corner; it turned to the right; I was on the left-hand side,
and as the car turned the corner I was flung out. I held up my hand

trying to get back up there.  I couldn't hold myself up with this one hand, so I fell off.  The reason I fell off was because the car was going too fast."

The evidence for the corporate defendant tends to show that it is engaged in freight transportation by automobile trucks between certain towns, and that none of its trucks or drivers has any business for the defendant in that section of the city where the plaintiff was injured; that George Foy worked for the Carolina Truck Transportation Company, both before and after the accident, but that for several days before and several days after the plaintiff was injured, the said Foy was not in the employ of the Carolina Truck Transportation Company, and that none of its trucks was in the vicinity of the accident at the time it occurred.

George Foy testified that he was not in the employ of the Carolina Truck Transportation Company at the time of the plaintiff's injury, and that the truck he was driving belonged to a man in Goldsboro who was looking for cotton hands; that he was accompanying his driver in that section of the city where he thought such hands might be found; and that the Carolina Truck Transportation Company had nothing whatever to do with the truck which injured the plaintiff or with its driver.

The usual issues of negligence, contributory negligence and damages were submitted to the jury and answered in favor of the plaintiff.  From the judgment rendered thereon the defendant appeals, assigning errors.

*Ernest M. Green and R. O'Hara for plaintiff.*
*Moore & Dunn for defendant.*

STACY, C. J., after stating the case: It is questionable as to whether the evidence is sufficient to show that the truck which injured the plaintiff belonged to the defendant, Carolina Truck Transportation Company, and that the driver of the truck was about the business of said defendant at the time of the injury; but, however this may be, and conceding for the moment that such inferences are permissible, still we think the plaintiff has failed to make out a case of liability against the corporate defendant, in that, no evidence has been offered to show that the driver was acting within the scope of his employment in taking the boys on the truck for a ride.  *Dover v. Manufacturing Co.,* 157 N. C., 324, 72 S. E., 1067.  If the defendant Foy had invited the plaintiff to ride with him on other occasions, there is no evidence that the corporate defendant knew it.  In this respect *Fry v. Utilities Co.,* 183 N. C., 281, 111 S. E., 354, is distinguishable.

It is neither alleged, nor shown by the evidence, that George Foy, when driving for the defendant company, had any authority, express or

implied, to invite or to permit boys to ride on the defendant's truck. Without such authority, express or implied, the invitation of the driver, even if given, was apparently beyond the scope of his employment, and it is well settled that the master is not liable for the acts of his servant which transcend the legitimate sphere of his employment and are not done in furtherance of the master's business. *Wilkie v. Stancil*, 196 N. C., 794, 147 S. E., 296; *Ferguson v. Spinning Co.*, 196 N. C., 614, 146 S. E., 597; *Grier v. Grier*, 192 N. C., 760, 135 S. E., 852; *Bilyeu v. Beck*, 178 N. C., 481, 100 S. E., 891; *Linville v. Nissen*, 162 N. C., 95, 77 S. E., 1096; *Daniel v. R. R.*, 136 N. C., 517, 48 S. E., 816.

Speaking to the subject in *Sawyer v. R. R.*, 142 N. C., 1, 54 S. E., 793, the following was quoted with approval from Wood on Master and Servant, sec. 279, p. 535:

"The question usually presented is whether, as a matter of fact or of law, the injury was received under such circumstances that, under the employment the master can be said to have *authorized* the act; for if he did not, either in fact or in law, he cannot be made chargeable for its consequences, because not having been done under authority from him, express or implied, it can in no sense be said to be his act, and the maxim previously referred to *(respondeat superior)* does not apply. The test of liability in all cases depends upon the question whether the injury was committed by the authority of the master, expressly conferred or fairly implied from the nature of the employment and the duties incident to it."

And, again, the same author, in section 307, says:

"The simple test is whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By 'authorized' is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to him by the master, even though in opposition to his express and positive orders."

To like effect is the following from *Marlowe v. Bland*, 154 N. C., 140, 69 S. E., 752: "An act is within the scope of the servant's employment, where necessary to accomplish the purpose of his employment, and intended for that purpose, although in excess of the powers actually conferred on the servant by the master. The purpose of the act rather than its method of performance is the test of the scope of employment. But the act cannot be said to be within the scope of the employment merely because the injuries complained of would not have been committed without the facilities afforded by the servant's relations to his master, nor because the servant supposed that he possessed authority to do the act in

question." See, also, *Elmore v. R. R.*, 189 N. C., 658, 127 S. E., 710, and cases there cited.

Nothing was said in *Misenheimer v. Hayman*, 195 N. C., 613, 143 S. E., 1, or *Hayes v. Creamery Co.*, 195 N. C., 113, 141 S. E., 340, both strongly relied upon by plaintiff, which, when properly applied, militates against our present position or is in conflict with any of the cases above cited. In the first, it is expressly stated that to hold the master liable for the tort of the servant, the plaintiff must show "that the driver of the truck was acting within the scope of his authority and in furtherance of his employer's business," citing as authority for the position: *Freeman v. Dalton*, 183 N. C., 538, 111 S. E., 863, and *Clark v. Sweaney*, 176 N. C., 529, 97 S. E., 474. In the second, the whole question was whether the prohibitory rule of the master had been so persistently and openly violated as to amount to its abrogation. If so, the master was deemed to have had knowledge of its violation and to have acquiesced in its abrogation, thus impliedly authorizing the acts of the servant. *Fry v. Utilities Co., supra.*

On the record, we think the action against the Carolina Truck Transportation Company should be dismissed as in case of nonsuit.

Reversed.