## P. F. COLLIER & SON DISTRIBUTING CORPORATION v. DRINKWATER.

### No. 3953.

Circuit Court of Appeals, Fourth Circuit.

Jan. 6, 1936.

Vivian L. Page, of Norfolk, Va. (John H. Hall, of Elizabeth City, N. C., and Ivor A. Page, Sr., of Norfolk, Va., on the brief), for appellant.

P. W. McMullan, of Elizabeth City, N. C. (M. B. Simpson and R. Clarence Dozier, both of Elizabeth City, N. C., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and CHESNUT, District Judge.

PARKER, Circuit Judge.

This is an appeal from a judgment in favor of plaintiff in a personal injury case. Action was instituted by one William Drinkwater against P. F. Collier & Son Distributing Corporation and W. J. Long, one of its employees, to recover on account of injuries sustained by Drinkwater in a collision between a motorcycle which he was driving and an automobile driven by Long. Service of process was never had upon Long, but plaintiff proceeded against the Collier & Son Distributing Corporation and obtained verdict and judgment against it. The appeal of that corporation presents a number of questions; but, in the view which we take of the case, we need consider only the one arising out of the refusal of the court to direct a verdict for defendant on the ground that it was not responsible for any negligence of Long in the operation of his automobile at the time of the collision. We think that when the evidence bearing on this question is viewed in the light most favorable to plaintiff, it fails to show that Long at that time was engaged in defendant's business, and that

verdict should have been directed in accordance with defendant's prayer.

The facts with respect to the employment of Long are that he was employed by Collier & Son as a collector and verifier of accounts upon a strictly commission basis to make collections in the territory near Portsmouth, Va., where he lived. He was required to pay his own expenses in making collections, except that he was allowed 3 cents per mile for traveling from one town to another in accordance with the itinerary prepared by the company. He traveled in his own automobile and paid the expenses of operating it, being reimbursed for this expense only to the extent of the allowance of 3 cents per mile between towns. He determined for himself the manner of doing his work, except that he was given an itinerary by Collier & Son which designated the days to be spent by him in each of the towns of his territory. These itineraries contemplated that he should go from one town to another on the company's business and allowed the 3-cent mileage on the basis that this should be done without returning to Portsmouth; but for the purpose of saving expense he was accustomed to return to Portsmouth for the nights when he was as near by as Elizabeth City, N. C., and invariably returned there for the week-ends, although his itinerary for the following week might carry him in the opposite direction. The company did not allow mileage for return to Portsmouth in such cases, but knew that it was customary for Long to go home for the week-ends, and at his request mailed to him there his weekly vouchers covering commissions earned.

On Friday and Saturday, October 5 and 6, 1934, Long was collecting in Elizabeth City, under an itinerary which required him to go on to Hertford on the following Monday and to Edenton on Tuesday. He was allowed mileage from Portsmouth to Elizabeth City, thence to Hertford, and thence to Edenton, without any allowance for return to Portsmouth in the meantime. He returned from Elizabeth City to Portsmouth on Friday night October 5th, however, and spent the night there, going back to Elizabeth City on Saturday morning; and he was returning from Elizabeth City to Portsmouth on Saturday afternoon, for the purpose of spending the week-end in Portsmouth, when the collision which resulted in plaintiff's injuries occurred. He had finished with the collections in Elizabeth City by 4 o'clock Saturday afternoon and had then gone to the post office and purchased a money order which he had sent to Collier covering the day's collections. He had then started to his home in Portsmouth, but on the way out of town had stopped at a store to buy some fruit, and while there had received from a customer of Collier & Son an item of 60 cents as advance payment on account, which the customer asked him to accept. He had then continued on his way home, and was just beyond the city limits of Elizabeth City driving toward Portsmouth when the collision occurred. The only suggestion that the return to Portsmouth had any connection with the business of Collier & Son is that his collection lists for Hertford and Edenton were at his home and that he expected to get them while there. He had completed his work for Collier & Son at Elizabeth City when he mailed the money order and had no further duties to perform for his employer that day.

■ Under these circumstances, we think that Collier & Son was clearly entitled to a directed verdict. Long was driving his own automobile, at his own expense, and for his own purposes; and we know of no principle upon which his employer can be held liable for his negligence. The ground of liability of the master for the negligent act of the servant is not that the servant represents the master in such act of negligence, but that he is conducting his master's affairs and that the master is bound to see that his affairs are so conducted that others are not injured. Philadelphia & R. Coal & Iron Co. v. Barrie (C.C.A.8th) 179 F. 50, 52, 53. As said by Chief Justice Shaw of Massachusetts in the leading case of Farwell v. Boston & Worcester R. R. Corp., 4 Metc. 49, 38 Am.Dec. 339, 340: "It is laid down by Blackstone, that if a servant, by his negligence, does any damage to a stranger, the master shall be answerable for his neglect. But the damage must be done while he is actually employed in the master's service; otherwise, the servant shall answer for his own misbehavior. 1 Bl.Com. 431; McManus v. Crickett, 1 East, 106. This rule is obviously founded on the great principle of social duty, that every man, in the management of his own affairs, whether by himself or by his agents or servants, shall so conduct them as not to injure another; and if he does not, and another thereby sustains damage, he shall answer for it."

It is in application of this principle that the doctrine respondeat superior is held to apply "only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong at the time and in respect to the very transaction out of which the injury arose." Wyllie v. Palmer, 137 N.Y. 248, 33 N.E. 381, 383, 19 L.R.A. 285; Martin v. Greensboro-Fayetteville Bus Line, 197 N.C. 720, 150 S.E. 501; Wilkie v. Stancil, 196 N.C. 794, 147 S.E. 296.

■ And in Standard Oil Co. v. Parkinson (C.C.A.8th) 152 F. 681, 682, the late Judge Walter H. Sanborn laid down a test for the application of the rule respondeat superior, which is an aid to clear thinking in a case such as this. He said: "The test of one's liability for the act or omission of his alleged servant is his right and power to direct and control his imputed agent in the performance of the causal act or omission at the very instant of the act or neglect. There can be no recovery of a person for the act or omission of his alleged servant under the maxim, 'respondeat superior,' in the absence of the right and power in the former to command or direct the latter in the performance of the act or omission charged, because in such a case there is no superior to respond."

■ Applying the rule as thus stated to the facts of the case before us, it is clear that, although Long was employed by Collier & Son, he was not engaged in his employer's business at the time of the collision which resulted in plaintiff's injuries. The relationship of master and servant did not exist "with respect to the very transaction out of which the injury arose," i. e., with respect to driving the automobile to Portsmouth that Long might spend the weekend there. And, to apply the test laid down by Judge Sanborn, it is clear that there was no right on the part of Collier & Son to direct his action at that time. The duties of the day had been performed. He was riding in his own automobile and paying his own expenses. He was going home for the week-end, not because his duties so required, but because it was less expensive and more satisfactory to him to do so than to spend Sunday in Elizabeth City, where the itinerary placed him. The fact that Collier & Son knew that he was accustomed to go home for the week-ends is immaterial. If this were a test of liability, every employer who knows that his employees ride to and from work in their own automobiles would be responsible for any injuries which they might inflict on the way.

The fact that the automobile was owned by Long would not of itself absolve his employer from responsibility for his negligence, if it was being operated at the time in the employer's business with his express or implied consent. Singer Mfg. Co. v. Rahn, 132 U.S. 518, 10 S.Ct. 175, 33 L.Ed. 440; 42 C.J. 1128; cf. Pyyny v. Loose-Wiles Biscuit Co., 253 Mass. 574, 149 N.E. 541. And, if the automobile were being used for carrying Long to his home, as an incident in the carrying on of the employer's business, the employer would be liable for negligence in its operation. See Silent Automatic Sales Corporation v. Stayton (C.C.A.8th) 45 F.(2d) 471, 474, and cases there cited. But no such element is present here. The evidence, it is true, justifies the finding that the employer knew that the automobile was being used in its business; and, if the injury had been inflicted while Long was carrying on that business, a different question would be presented. But in driving to Portsmouth for the week-end, Long was engaged in no business of his employer. Collier & Son did not direct how he should travel to and from his work; and it was no concern of theirs how he got to and from Portsmouth, or whether he went home for the week-end or not. The case is very different from those in which the employer permits the employee to drive the car which he is using to his home and keep it overnight, where what is done is beneficial to the employer's business in which the employee is engaged and the employer has at all times the right to control the action of the employee with respect thereto. For cases in which the principles herein stated have been applied in a great variety of circumstances, see notes in 17 A.L.R. 621, 29 A.L.R. 470, and 54 A.L.R. 627, and two recent cases in the federal appellate courts, P. F. Collier & Son Co. v. Hartfeil (C.C.A.8th) 72 F.(2d) 625, and Peabody v. Marlboro Implement Co., 63 App.D.C. 288, 72 F.(2d) 81.[1]

---

[1] It is of interest to compare cases dealing with liability of the master where injuries are inflicted by a servant in driving an automobile to or from his home, which may be grouped as follows:

1. *Employer owner of automobile and*

In North Carolina, where this case originated and where it was tried, there can be no question either as to the rule which we have stated being the law recognized by the state courts or as to its being applied by them to deny liability in a case such as this. See Peters v. Great Atlantic & Pacific Tea Co., 194 N.C. 172, 138 S.E. 595; Wilkie v. Stancil, 196 N.C. 794, 147 S.E. 296; Martin v. Greensboro-Fayetteville Bus Line, 197 N.C. 720, 150 S.E. 501; Cotton v. Carolina Truck Transp. Co., 197 N.C. 709, 150 S.E. 505; Cole v. Funeral Home, 207 N.C. 271, 176 S.E. 553; Van Landingham v. Singer Sewing Machine Co., 207 N.C. 355, 177 S.E. 126. In the case last cited plaintiff was injured by an automobile driven by an agent of the sewing machine company. This automobile was owned by the agent and was used by him in the business of the company when occasion required. He was on his way

---

*held liable.* Where the master's car with his consent is used by the servant in going to and from home, the master is held liable if such use appears in furtherance of the master's business or if it is for benefit of master as well as of servant. Krousel v. Thieme, 13 La.App. 680, 128 So. 670; Primos v. Gulfport Laundry & Cleaning Co., 157 Miss. 770, 128 So. 507; Depue v. George D. Salmon Co., 92 N.J. Law, 550, 106 A. 379; Dunbaden v. Castles Ice Cream Co., 103 N.J.Law, 427, 135 A. 886; Clawson v. Pierce-Arrow Motor Car Co., 231 N.Y. 273, 131 N.E. 914; Friend-Rowe Motor Co. v. Ricci (Tex.Civ.App.) 293 S.W. 851; Gutzwiller v. American Tobacco Co., 97 Vt. 281, 122 A. 586; Cyclopedia of Automobile Law, vol. 2, p. 1410; Huddy on Automobiles (7th Ed.) p. 812.

2. *Employee owner of car and employer held liable.* And, even though the employee owns the car, it is held that the master is responsible for his negligence in driving to and from his home, if the car is kept there as an incident of and an aid to the carrying on of the master's business. Silent Automatic Sales Corp. v. Stayton (C.C.A.8th) 45 F.(2d) 471; Brown v. Montgomery Ward & Co., 104 Cal.App. 679, 286 P. 474; Caver v. Eggerton, 157 Miss. 88, 127 So. 727 (employee was on way to work in the morning); Schmitt v. American Press (Mo. App.) 42 S.W.(2d) 969 (employee was on way to work in the morning); Burgess v. Garvin, 219 Mo.App. 162, 272 S.W. 108; Auer v. Sinclair Refining Co., 103 N.J. Law, 372, 137 A. 555, 54 A.L.R. 623; Dayton Biscuit Co. v. Aerni, 40 Ohio App. 49, 177 N.E. 775; Buckley v. Harkens, 114 Wash. 428, 195 P. 250 (employee owned car but he did not have a license authorizing him to drive car as his property. He drove under the license of and as property of the motor company.)

3. *Employee owner of car and employer held not liable.* But when servant owns automobile and is operating it solely for his own purpose in going to and from work, the master is not liable for negligence in its operation. Clough v. Allen, 115 Cal.App. 330, 1 P.(2d) 545; Nagy v. Kangesser, 32 Ohio App. 527, 168 N.E. 517 (employee was on way to work in the morning); Wilson & Co. v. Shaw, 157 Okl. 34, 10 P.(2d) 448; Barton v. J. M. Radford Grocery Co. (Tex.Civ.App.) 85 S.W.(2d) 801; Bishop v. Farm & Home Sav. & Loan Ass'n (Tex.Civ.App.) 75 S. W.(2d) 285 (employee was on way home and to work from a week-end trip).

4. *Employer owner of car and held not liable.* (a) And, even where the automobile is owned by the master and with his permission is used by servant in going to and from home, the master is not liable for negligent operation when the car is being used by the servant solely for his own convenience, and not as incidental to or in aid of the business of the master. Mauchle v. Panama-Pacific International Exposition Co., 37 Cal.App. 715, 174 P. 400; Nussbaum v. Traung Label & Lithograph Co., 46 Cal.App. 561, 189 P. 728; Lee v. Nathan, 67 Cal.App. 111, 226 P. 970; Haynes v. Stroh, 99 Ind.App. 595, 193 N.E. 721; Gewanski v. Ellsworth, 166 Wis. 250, 164 N.W. 996; Cyclopedia of Automobile Law, vol. 2, p. 1419; Huddy on Automobiles (7th Ed.) p. 814.

(b) And, where the automobile of the master is intrusted to the servant and he uses it for purposes of his own, unconnected with the business of the master, the latter is not liable for his negligence. Hall v. Puente Oil Co., 47 Cal.App. 611, 191 P. 39; Swanson Electric & Manufacturing Co. v. Johnson, 79 Ind.App. 321, 138 N.E. 262; Waddell v. Langlois (La. App.) 158 So. 665; Horvath v. Finest Products Co., 270 Mich. 352, 259 N.W. 120; Martin v. Greensboro-Fayetteville Bus Line, 197 N.C. 720, 150 S.E. 501; Dominguez v. Blaugrund (Tex.Civ.App.) 42 S.W.(2d) 489; Houston Oil Co. v. Wilson (Tex.Civ.App.) 70 S.W.(2d) 285; Reynolds v. Texas Iron Works Corp. (Tex.Civ.App.) 72 S.W.(2d) 299; Magee v. Hargrove Motor Co., 50 Idaho, 442, 296 P. 774 (week-end trip); Loucks v. R. J. Reynolds Tobacco Company, 188 Minn. 182, 246 N.W. 893 (week-end trip); Grier v. Grier, 192 N.C. 760, 135 S.E. 852 (week-end trip).

from the office of the company to his home for lunch when he struck and injured plaintiff. In holding that the company was not liable under the circumstances, the court quoted with approval the following language of Chief Justice Stacy in Martin v. Greensboro-Fayetteville Bus Line, supra, which we think correctly states the rules of law applicable in such cases, and which disposes of the contention of the plaintiff here, viz.:

"When it is sought to hold one responsible for the neglect or tort of another, under the doctrine of respondeat superior, at least three things must be made to appear, yea, four, and, upon denial of liability, the plaintiff must offer 'some evidence which reasonably tends to prove every fact essential to his success.' State v. Bridgers, 172 N.C. 879, 89 S.E. 804, 806.

"(1) That the plaintiff was injured by the negligence of the alleged wrongdoer. Hurt v. Power Co., 194 N.C. 696, 140 S.E. 730.

"(2) That the relation of master and servant, employer and employee, or principal and agent, existed between the one sought to be charged and the alleged tortfeasor. Linville v. Nissen, 162 N.C. 95, 77 S.E. 1096.

"(3) That the neglect or wrong of the servant, employee, or agent was done in the course of his employment or in the scope of his authority. Ferguson v. Spinning Co., 196 N.C. 614, 146 S.E. 597 [62 A.L.R. 1430]; Fleming v. Knitting Mills, 161 N.C. 436, 77 S.E. 309.

"(4) That the servant, employee, or agent was engaged in the work of the master, employer, or principal, and was about the business of his superior, at the time of the injury. Gurley v. Power Co., 172 N.C. 690, 90 S.E. 943.

"It is elementary law that the master is responsible for the negligence of his servant which results in injury to a third person when the servant is acting within the scope of his employment and about the master's business. Roberts v. R. R., 143 N.C. 176, 55 S.E. 509, 8 L.R.A.(N.S.) 798, 10 Ann.Cas. 375. It is equally elementary that the master is not responsible if the negligence of the servant which caused the injury occurred while the servant was engaged in some private matter of his own or outside the legitimate scope of his employment."

Plaintiff relies strongly upon Brown v. Montgomery Ward & Co., 104 Cal.App. 679, 286 P. 474. It appears in that case, however, that the employee was traveling at the expense and under the direction of the employer; that, in the line of his duty he returned to Oakland one Saturday evening after the employer's place of business had been closed and proceeded to his home without reporting; and that on the way home he inflicted the injury for which suit was brought. The court apparently proceeded on the theory that as the employee was required to return to Oakland on Saturday, and as his employer's store was closed when he arrived in Oakland, he was acting within the scope of his employment in driving the car on to his home. The case is clearly distinguishable from this, where there was no duty to return to Portsmouth and the employee was returning for his own purposes and at his own expense.

For the reasons stated, we think that verdict should have been directed for Collier & Son, and the judgment appealed from will accordingly be reversed.

Reversed.