## UNITED STATES v. ELEAZER.
### No. 5938.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 18, 1949.

Decided Nov. 7, 1949.

Morton Hollander, Attorney, Department of Justice, Washington, D. C. (H. G.

Morison, Assistant Attorney General; Ben Scott Whaley, U. S. Attorney; Charleston, S. C., Paul A. Sweeney and Massillon M. Heuser, Attorneys, Department of Justice, Washington, D. C., on brief), for appellant.

James F. Dreher, Columbia, S. C. (Blatt & Fales, Barnwell, S. C., and Robinson & Robinson, Columbia, S. C., on brief), for appellee.

Before PARKER, Chief Judge and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by the United States from a judgment under the Federal Tort Claims Act, 60 Stat. 842, 28 U.S.C.A. § 921 et seq. [now §§ 1346, 2671 et seq.]. The plaintiff was injured in the collision between an automobile which he was driving and one owned and driven by Lieutenant James B. Talley of the United States Marine Corps. The trial judge held the United States liable under the Tort Claims Act for plaintiff's injury and the correctness of that holding is the only question presented by the appeal.

The facts are that Lieutenant Talley, who had been stationed at the Cherry Point Marine Base in North Carolina, had received an order under date of August 15 directing him to report at Corpus Christi, Texas, but authorizing him to "delay in reporting until September 1, 1946, such delay to count as leave" and providing that "the travel herein enjoined is necessary in the public service". He left Cherry Point on August 20, driving his own automobile and accompanied by his sister, who had been visiting him. He intended to drive with his sister to Raleigh, N. C. and then go to his home in Atlanta, Georgia, whence after a brief stay he would proceed in his automobile to his post at Corpus Christi in time to report for duty on September 1, as required by his orders. Shortly after he left Cherry Point, his automobile suddenly swerved to the left and crashed into the car of plaintiff, inflicting the injuries for which judgment was rendered. There is no question but that, at the time of the collision, Talley was driving on the route he would have had to follow in driving by car from Cherry Point to Corpus Christi and

that under his travel orders he was entitled to reimbursement from the government for mileage at a fixed rate by the nearest route, whatever means of transportation he may have chosen. There is likewise no question but that Talley was on his way home for the enjoyment of his deferred leave and that the government had nothing to do with the selection of his own automobile as his means of transportation and exercised no control over the manner of its operation.

Under these circumstances we think that judgment should have been entered for the government. The United States is liable under the Tort Claims Act only where the employee who causes injury is "acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Sec. 410(a) [now 28 U.S.C.A. § 2674]. It seems perfectly clear that, in driving his own automobile on this trip home on deferred leave, Lieutenant Talley was acting, not within the scope of his office or employment as a lieutenant in the Marine Corps, but for his own use and benefit and subject to the control of no one but himself. It is true that he had been ordered to report on September 1 at Corpus Christi and had been directed to travel there so that he could be reimbursed for the expense of travel at the regular mileage rate; but he and not the government selected the means of transportation and no officer of the government had any right to exercise control over his operation of the means chosen. All that the government was interested in was that he report for duty at Corpus Christi on Sept. 1, and he could travel there by rail, by bus, by car or by air as he saw fit. When he chose to drive his own car, instead of availing himself of commercial transportation, he was acting in furtherance of his own purposes, not those of the government; and his action in driving the car cannot reasonably be said to have been action taken within the scope of his employment or office.

The ground of liability of the master for the negligent act of the servant is that the servant is conducting the master's affairs and that the latter has the right of control with regard thereto and is bound to see that they are so conducted that others are not injured thereby. Philadelphia & R. Coal & Iron Co. v. Barrie, 8 Cir., 179 F. 50, 52, 53. As said by Chief Justice Shaw of Massachusetts in the leading case of Farwell v. Boston & Worcester R. Corp., 4 Metc., Mass., 49, 38 Am.Dec. 339, 340:

"It is laid down by Blackstone, that if a servant, by his negligence, does any damage to a stranger, the master shall be answerable for his neglect. But the damage must be done while he is actually employed in the master's service; otherwise, the servant shall answer for his own misbehavior. 1 B. Com. 431; McManus v. Crickett 1 East 106. This rule is obviously founded on the great principle of social duty, that every man, in the management of his own affairs, whether by himself or by his agents or servants, shall so conduct them as not to injure another; and if he does not, and another thereby sustains damage, he shall answer for it."

It is in application of this principle that the doctrine respondeat superior is held to apply "only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong at the time *and in respect to the very transaction* out of which the injury arose." (Italics supplied.) Wyllie v. Palmer, 137 N.Y. 248, 33 N.E. 381, 383, 19 L.R.A. 285; Martin v. Greensboro-Fayetteville Bus Line, 197 N.C. 720, 150 S.E. 501; Wilkie v. Stancil, 196 N.C. 794, 147 S.E. 296.

In Standard Oil Co. v. Parkinson, 8 Cir., 152 F. 681, 682, the late Judge Walter H. Sanborn laid down a test for the application of the rule respondeat superior, which is an aid to clear thinking in a case such as this. He said:

"The test of one's liability for the act or omission of his alleged servant is his right and power to direct and control his imputed agent in the performance of the causal act or omission at the very instant of the act or neglect. There can be no recovery of a person for the act or omission of his alleged servant under the maxim,

'respondeat superior,' in the absence of the right and power in the former to command or direct the latter in the performance of the act or omission charged, because in such a case there is no superior to respond."

Applying the rule as thus stated to the facts of the case before us, it is clear that Lieutenant Talley was not engaged in business of the government at the time of the collision which resulted in plaintiff's injuries. The relationship of master and servant did not exist with respect to the very transaction out of which the injury arose; i. e. with respect to driving the automobile. And to apply the test laid down by Judge Sanborn, it is clear that there was no right on the part of the government to direct his driving. He was riding in his own automobile because he chose to do so, and for no other reason; and the fact that the government was to pay him mileage to Corpus Christi is no more reason for imposing liability on it for his negligent driving than for imposing liability for the negligence of a railroad company or the pilot of an airplane, if he had chosen to make the trip by rail or by air.

A very similar question was dealt with in the A. L. I. Restatement of Agency at p. 539–540, where the law is stated as follows:

"The fact that the instrumentality used by the servant is not owned by the master which may indicate that the use of the instrumentality is not authorized, or if authorized, that its use is not within the scope of employment. The master may authorize the use of a particular instrumentality without assuming control over its use as a master. The fact that he does not own it or has not rented it upon such terms that he can direct the manner in which it may be used indicates that the servant is to have a free hand in its use. If so, its control by the servant, although upon his master's business, is not within the scope of the employment."

And the rule is exemplified in illustration 4, as follows:

"4. The master agrees with A, his servant, to pay for A's transportation upon public vehicles such as railway trains and street cars, A being permitted to use his own automobile for transportation, charging to the master the regular train fare. A is paid by the week, with indefinite hours of labor. In going to a place at which he is to perform work for the master, A drives his own car, carrying thereon necessary tools and materials belonging to the master. *In the absence of evidence that A owes P* (the employer) *any duty of obedience in the details of operating the automobile, such driving is not within the scope of employment*". (Italics supplied.)

For cases wherein these passages of the Restatement have been applied, see Reiling v. Missouri Ins. Co., 236 Mo.App. 164, 178, 153 S.W.2d 79, 86; Blackman v. Atlantic City & Shore R. Co., 126 N.J.L. 458, 462, 19 A.2d 807, 809; Holdsworth v. Pennsylvania Power & Light Co., 337 Pa. 235, 236, 241, 242, 10 A.2d 412, 414, 415.

■ As the injury here involved occured in the State of North Carolina, the law of that state furnishes the rule as to the liability of the master for the negligence of the servant; and the decisions leave no doubt as to the rule there recognized being as we have stated it. In Van Landingham v. Singer Sewing Machine Co., 207 N.C. 355, 177 S.E. 126, the court quoted the following statement of the rule from Linville v. Nissen, 162 N.C. 95, 101, 77 S.E. 1096, 1099:

"The doctrine of respondeat superior applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of wrong at the time and in respect to the very transaction out of which the injury arose."

In Wilkie v. Stancil 196 N.C. 794, 147 S. E. 296, 297, the Supreme Court of North Carolina reversed a judgment in favor of a person who had been injured by the superintendent of a store while the latter was driving his own car to the store on a holiday for the purpose of turning on the lights of the store, as it was his duty to do. In holding that the superintendent was not engaged in his master's business in driving the car and hence that the rule respondeat superior did not apply, the court used the following language, which is most pertinent here, viz.:

"To permit a recovery against Gilmers under these circumstances would be to enlarge the rule of respondeat superior to such an extent as to make the master liable for every negligent act his servant might commit while going to or from his place of work, though transported in a vehicle of his own selection, over which the master had no control and in which he had no interest."

The question was before this court in a case originating in North Carolina in P. F. Collier & Son Distributing Corp. v. Drinkwater, 4 Cir., 81 F.2d 200; and although that decision was rendered before Erie v. Tompkins and we were applying what we understood to be the general law, we pointed out that it was in accord with the law in North Carolina and cited the controlling decisions of that state on the subject. There, as here, the employee was driving his own car and was allowed mileage by his employer between points where it was necessary to travel for business purposes. He was going home for a week end, which was for his own purposes, just as here the trip to Atlanta was for the purposes of Lieutenant Talley. All aspects of the question were thoroughly considered by us in denying that the rule respondeat superior applied to the case.

■ It is argued, however, that, because the Tort Claims Act provides that, in the case of a member of the military or naval forces, "acting within the scope of his office or employment" means "acting in line of duty", the responsibility of the United States under the respondeat superior doctrine is greatly enlarged, since the phrase as used in prior legislation is construed to cover conduct without as well as within the scope of employment as ordinarily understood. We are not impressed with this argument. It was the manifest purpose of Congress, plainly set forth in the words of the statute, to render the United States liable for the torts of its employees with certain specified exceptions, just as though it were a private person; and there could have been no possible reason to extend the rule of respondeat superior in the case of torts committed by military or naval personnel. The words of the statute relied on by plaintiff were doubtless used because it

was felt that as to military and naval personnel "line of duty" more correctly described action representing the government than "scope of employment"; but it is clear, we think, that neither phrase as used in the act was intended to do more than provide for liability on the part of the government for acts committed by those carrying on its business under such circumstances as to render it liable therefor if it were a private person. Directly in point is the decision in Campbell v. United States, 5 Cir., 172 F.2d 500, 503, certiorari denied 337 U.S. 957, 69 S.Ct. 1532; and we are in thorough accord with both the reasoning and the conclusion of the opinion in that case, wherein Judge Hutcheson, speaking for the court, said:

"The whole structure and content of the Federal Tort Claims Act makes it crystal clear that in enacting it and thus subjecting the Government to suit in tort, the Congress was undertaking with the greatest precision to measure and limit the liability of the Government, under the doctrine of respondeat superior, in the same manner and to the same extent as the liability of private persons under that doctrine were measured and limited in the various states. The very heart and substance of the act is to be found in the words, 'scope of his office or employment,' not as appellee would read them when wrenched out of their context, but as they are precisely limited in it, to the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the state where the injury occurs."

Directly in point on this question, also, is Rutherford v. United States, D. C., 73 F. Supp. 867, affirmed 6 Cir., 168 F.2d 70, holding that the United States was not liable for an injury inflicted by a petty officer of the navy while driving his automobile home from a radio station where he had broadcast a naval recruiting program. The ground of the decision was that in driving the automobile the officer was not acting within the scope of his office or employment within the meaning of the statute in question. See also Murphey v. United States, 79 F.Supp. 925; Cropper v. United States, D. C., 81 F.Supp. 81.

For the reasons stated, the judgment appealed from will be reversed and the case will be remanded with direction to enter judgment for the United States.

Reversed.