Vance Fleming and his wife brought two separate actions against defendants. Complaints and answers were filed in both cases.
Plaintiff, Vance Fleming, contends: That on 19 February, 1924, W. L. Holleman was the local manager, agent and employee of Armour Company, a corporation doing business in Raleigh, N.C. and on that date, about 6:30 o'clock p. m., was engaged in the operation of a Ford coupe for and in behalf of Armour Company, and with its knowledge, consent and approval. That on the said date and hour, Vance Fleming was standing at the rear of a wagon that at said time occupied a position near the center of North Wilmington Street, between Jones and Lane streets, in the city of Raleigh, N.C. which said wagon had shortly theretofore been struck and damaged by an automobile, and that plaintiff was assisting the owner of said wagon in making an inspection thereof in order to determine the extent of the damage thereto, and he was at said time facing in a northerly direction, when the defendant, W. L. Holleman, the local manager, agent and employee of the defendant, Armour Company, who was operating its said Ford coupe for and in behalf of the said Armour Company, and with its knowledge, consent and approval, approached said point on said North Wilmington Street in said Ford coupe, driving northerly on said street, and negligently, carelessly and recklessly, and without any notice or warning to the plaintiff, caused, allowed and permitted said Ford coupe to run into, over and upon the plaintiff, and violently collide with said wagon, and, as a direct and proximate result thereof, plaintiff was seriously, painfully and permanently injured. (1) In that the defendants negligently, carelessly and unlawfully ran and operated said Ford coupe over and upon said North Wilmington Street, which was a principal and much used street in the city of Raleigh, N.C. at a high, negligent and unlawful rate of speed; (2) In that the defendants negligently, carelessly and wrongfully ran and operated said Ford coupe in a negligent and careless manner, and in such manner as to endanger, and which did in fact endanger, the life and limb of persons rightfully using the said street at said time; (3) In negligently and carelessly failing to keep a reasonable, constant and proper lookout as it was their duty to have done; (4) In negligently and carelessly failing to observe the presence of the plaintiff, and in negligently and carelessly failing to signal, notify or warn him of the approach of said Ford coupe to said point; (5) *Page 451 
and in negligently and carelessly failing to have said Ford coupe under control and in negligently and carelessly failing to reduce the speed thereof or to stop the Ford coupe in order to avoid said collision, when by so doing the defendants could have avoided injuring the plaintiff; (6) and in negligently and carelessly failing to pass the plaintiff when there was ample space in said street for said automobile to have passed without running into and over the plaintiff.
The defendants contend that neither Holleman nor Armour Company were negligent, and contend that in the operation of the Ford coupe by Holleman at the time of the injury, Armour Company were in no way responsible. They set up the plea of contributory negligence and contend: (1) That the wagon was standing in the street, contrary to the city ordinance, and without a light or any warning to travelers on the street; it was the duty of the owner to remove it or provide a light or some other signal to warn travelers; (2) at the time of the collision the plaintiff was carelessly and negligently standing on or near said wagon, near the center of the street, that he knew or should have known the wagon was unlighted to warn persons traveling on said street; (3) that at the time of the collision, Holleman was driving the automobile at a slow and lawful rate of speed, in a careful and prudent manner, having the auto under control and keeping a careful and proper lookout; (4) that at the time of the collision it was raining and sleeting, which tended to obscure the vision of the driver, which fact the plaintiff knew or should have known; (5) that Fleming carelessly and negligently stood on or near the unlighted wagon in the center of a much traveled street, when he knew or should have known that the atmospheric condition was such that it was impossible for a person traveling in an auto to see unlighted obstructions. That he failed to give any signal or warning that he was in the street at the time. That the plaintiff's carelessness and negligence was the proximate cause of the injury.
The record shows: "The court in its discretion ordered that these actions be consolidated and tried together. . . . It appearing that these two cases, Nos. 9069 and 9070, arose out of the same alleged negligence of the defendant, and the only difference in them was as to the damages sought to be recovered by Vance Fleming in one case and Mrs. Vance Fleming in the other, and the court, of its own motion, ordered that the cases be consolidated and tried together."
The issues submitted to the jury and their answers thereto, were as follows:
"1. Was the plaintiff, Vance Fleming, injured by the negligence of the defendant, W. L. Holleman, as alleged in the complaint? Answer: Yes. *Page 452 
"2. Was the plaintiff, Vance Fleming, injured by the negligence of the defendant, Armour Company, as alleged in the complaint? Answer: Yes.
"3. Did the plaintiff, Vance Fleming, by his own negligence, contribute to his injury, as alleged in the answer? Answer: No.
"4. What damage, if any is the plaintiff, Vance Fleming, entitled to recover? Answer: $12,500.00.
"5. Was the plaintiff, Mrs. Vance Fleming, injured by the negligence of the defendants, as alleged in her complaint? Answer: No.
"6. What damages, if any, is the plaintiff, Mrs. Vance Fleming, entitled to recover of the defendants? Answer: ____."
There was a judgment on the verdict and appeal to the Supreme Court. Many exceptions and assignments of error appear in the record. The other material facts will be set out in the opinion and the relevant assignments of error.
The consolidation of the two actions which defendants assign as error, we cannot so hold. Defendants did not except to the order, although plaintiffs did. The jury having found that Mrs. Vance Fleming was not injured by the negligence of the defendant and awarded her no damages, we think, on the whole record, defendants have not been prejudiced by the consolidation, or their rights injuriously affected. The principle laid down in Ins. Co. v. R. R., 179 N.C. p. 260, is correct: "The object of consolidating two or more actions is to avoid a multiplicity of suits, to guard against oppression or abuse, to prevent delay, and especially to save unnecessary cost or expense; in short, the attainment of justice with the least expense and vexation to the parties litigant. Consolidation, however, is improper, where the conduct of the cause will be embarrassed, or complications or prejudice will result, which will injuriously affect the rights of a party. 8 Cyc., 591."
At the close of the evidence each defendant renewed his motion for judgment as of nonsuit against each plaintiff. The refusal of the court below was assigned as error. We have often said: "On a motion to nonsuit, the evidence is to be taken in the light most favorable to plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom." Lindsey v.Lumber Co., 189 N.C. 119, and cases cited; Barnes v. Utility Co., ante, 382.
Facts: Vance Fleming, who lived at 217 N. Wilmington Street, between Jones and Lane streets (fourth house from corner on left-hand side *Page 453 
going north), in Raleigh, at about 6:30 o'clock p.m., on 19 February, 1924, was in his living room reading the evening paper and heard a commotion outside — one calling for help. He testified, in part: "I went to Mr. Hinshaw's wagon; it was south of Lane Street, and the shafts were in Lane Street, and there was plenty of light around there. I saw the wagon as I went out from the house and when I got there it was more to the east side of Wilmington Street. I thought I would assist him any way I could and was making an inspection of the wagon to see how badly it was damaged, and there was an argument about a bolster being damaged, and I struck a match and held it behind the hind wheel to see if it was broke, and some one hollered `look out,' and the lick all came at the same time, and that is when I was struck. I was standing at the left back wheel. I had no notice of the approach of a car, and no horn sounded. It broke my leg, and I was so that I could not get away from that spot, and was losing blood. After the automobile hit the wagon it bounced back. I was between the automobile and the wagon. Mr. Hinshaw was just ahead of me at that time." He described his injuries and suffering, etc. . . . "It was about 6:30 in the afternoon when I had this accident, and it was after the lights were on. It was not very dark: it was dark under the part of the wagon I was inspecting, and I had to strike a match. It was a rainy night, but not sleety or freezing. Some one came in and said the wagon had been broken and I went out there to assist the man in trouble, Mr. Hinshaw. He was a little to the east; it was more to the right of the center of the street. I think I was there a little over five minutes. There were no lights on the wagon. I was southward of the wagon when I was hurt; while I was in that position some one bumped into me with a Ford and some one hollered all at the same time."
J.G. Jones, who lives at 223 N. Wilmington Street, testified in part: "The night of Mr. Fleming's injury I was on my porch. I saw the automobile that struck him; I saw it when it passed in front of the house, and then it was 100 feet from the point where it collided. It was making between twenty and twenty-five miles per hour. It was a rainy and bad night. I heard the car when it collided with the wagon and it was dark and I could not see it when it hit. The wagon was on the right side going up. There was plenty of room on the left for him to pass on the right side. I did not hear any signal of approach given of the car. At first there was another car that ran into the wagon. I was there on the porch and had been sick, and I heard the other car run into it. I think the mule or horse that was hitched to the wagon had been carried over to the side street. I am familiar with the arc light at the intersection of Wilmington and Lane Streets. There is nothing there to obscure the vision of a person looking in the *Page 454 
street. I could see it distinctly. I went to the scene of the collision after Mr. Fleming was hurt and he was in the edge of the curve below the car. You could see the blood and he seemed to be suffering a great deal. I helped carry him to the hospital and he was still suffering a great deal, and I helped undress him. . . . I was on my porch and I live on the west side of Wilmington Street next door to where Mr. Fleming lived. My house is about 100 feet from where the crash was. This wagon was standing a little to the right of the center of Wilmington Street, facing north. I think the arc light is in the center of the intersection, practically all of them are. I think this light is practically in the center of the street. This night was bad and rainy, and it was cold. I expect it was cold enough for the rain to freeze on the windshield, but I am not sure. The automobile struck the wagon and I heard the crash; I saw some one but did not know it was Mr. Fleming until afterwards."
Part of C.S., 2616, is as follows: "Upon approaching a pedestrian who isupon the traveled part of any highway, and not upon a sidewalk, and upon approaching an intersecting highway or a curve, or a corner in a highway where the operator's view is obstructed, every person operating a motor vehicle shall slow down and give a timely signal with his bell, horn, orother device for signaling. (Italics ours.) Upon approaching an intersecting highway, a bridge, a dam, curve, or deep descent, and also in traversing such intersecting highway, bridge, dam, curve, or descent, a person operating a motor vehicle shall have it under control and operate it at such speed, not to exceed ten miles an hour, having regard to the traffic then on such highway and the safety of the public."
C.S., 2618. It may be noted that this section has been amended by Public Laws 1925, chap. 272:
(1) 20 miles per hour in the built-up residential section of any village, town or city, etc.
(2) 12 miles per hour in the business portion of any town or city.
(3) 15 miles per hour while passing any church or school when people are leaving or entering.
(4) 15 miles per hour in traversing an intersection of highways when the driver's view is obstructed, etc.
(5) 15 miles per hour in traversing or going around corners of a highway, etc.
(6) 35 miles per hour on all highways beyond the built-up residential section of incorporated cities, towns, etc.
(7) The governing body of every incorporated city or town shall have authority by ordinance to make reasonable street crossing regulations. (This section was passed to meet the decision in S. v. Stallings,189 N.C. p. 104.) *Page 455 
(8) No person shall operate upon the public highways or streets a motor vehicle with muffler cut-out open, or with exhaust whistle or objectionable signal devices.
This act shall not be construed to repeal any Public-Local Law providing for a greater rate of speed, etc.
At the time of the collision and injury, under the statute then in force, it being in a residential portion of the city, a person could not operate a motor vehicle at a rate of speed in excess of 18 miles per hour. C. S., 2618, supra. The witness, Jones, testified for plaintiff that defendant, Holleman, was making between twenty and twenty-five miles per hour.
In Davis v. Long, 189 N.C. p. 134, we said: "A statutory duty was imposed on defendant. He failed to do what the law required of him. This was negligence per se, and it was a question for the jury to say whether or not such negligence was the proximate cause of the injury to plaintiff."Albritton v. Hill, ante, 429.
The second issue: "Did Vance Fleming by his own negligence contribute to his injury?" The burden of proof rests with defendant. Plaintiff, on an act of mercy, had gone into the public street at the cry for help — he went to "assist the man in trouble." A Mr. Hinshaw's wagon had been struck by a passing automobile. It was a rainy and bad night, but there was an arc light at the intersection of Wilmington and Lane streets. Fleming was standing at the left back wheel. He testified "there was plenty of light around there." He was struck from the rear by the car Holleman was operating, and was between the automobile and the wagon. No notice was given Fleming by sounding a horn or otherwise. There was abundant evidence to be submitted to the jury that defendant, Holleman, was negligent and his negligence was the proximate cause of the injury, and that plaintiff Vance Fleming was not guilty of contributory negligence. All the aspects of negligence and contributory negligence were submitted carefully to the jury by the court below, and the law applicable to the facts. Fleming was in the street, well lighted, a place that he had a right to be, and without warning the defendant, running twenty or twenty-five miles an hour, struck him. The defendant Holleman contends to the contrary, but the jury has accepted plaintiff's version. We think the court below was correct in refusing to grant the motion to nonsuit. The law of the road gives pedestrians rights which the drivers of automobiles are bound to respect. The rule of law and of the road is that when approaching a pedestrian upon the traveled part of the highway, the person operating a motor vehicle shall slow down and give a timely signal with his bell, horn or other device for signaling. C. S., 2616, supra. Although this has been statutory law for nearly nine years, yet *Page 456 
injuries are occurring almost daily by nonobservance of the rule of the road by automobile drivers. The speed regulations have been in force a like time.
Defendants assign error: "To the statement of the court that the defendant, Armour Company, admitted that the defendant, Holleman, was at the time of the injury operating its car for and on behalf of the defendant Armour Company. There is no such admission on the part of Armour 
Company. It did admit in its answer that it owned this automobile. It admitted that Holleman was its employee, but it did not admit that the defendant Holleman was at the time of the accident acting within the scope of his authority or that he was engaged in the business of Armour 
Company." This cannot be sustained. Section 6 of plaintiff's complaint is as follows: "That on the 19th day of February, 1924, the defendant, W. L. Holleman, the defendant, Armour Company's local manager, agent and employee, was engaged in the operation of said Ford coupe for and in behalf of the defendant, Armour Company, and with its knowledge, consent and approval." Section 6 of answer is: "That the allegations of paragraph 6 of the complaint are admitted." W. L. Holleman testified: "I used this car in going backward and forward. On this night in question I was driving a Ford that belonged to Armour Company, which car I kept at my home. On 19 February, 1924, I drove this car toward my home. . . . Have been using it constantly since then. I only use this car in the company's business. At the time of the accident I was on my way home." We think all the evidence on this phase sufficient to justify the court below in the charge as given.Williams v. R. R., ante, 366.
From a careful review of the case we can find no reversible or prejudicial error on the first, second and third issues. On the fourth issue as to damages, we feel compelled to send the case back for a new trial.
The testimony of Vance Fleming, in his direct examination, is as follows: "My leg is swollen some today, but not as much as yesterday. (Witness here pulls his trousers up and exhibits his leg to the jury.) It was broken right here. (Indicates a place about midway between the knee and ankle.) There is a difference in the color of the two limbs. When you press upon this injured leg the dent will stay in, it is like a mellow apple, and the other leg is not like that. There is not much feeling in the injured leg. The most severe pain is right across here. (Indicates broken place.) I still suffer with pain in my hip; it is a tired, aching feeling."
Dr. Ben J. Lawrence and Dr. Upchurch, experts, testified to examining and treating Fleming after the injury, and the extent of the injury, etc. After the testimony of plaintiff and Dr. Lawrence, and during *Page 457 
the progress of the trial, the following occurred: "In open court the attorneys for the defendant tender to the plaintiff, Drs. Glascock and Caveness and ask leave of the court for them to examine the plaintiff either in the presence of the jury or in the back room. Counsel for plaintiff asked that this be done in the presence of Dr. Ben J. Lawrence, and it having been disclosed to the court that there seems to be some feeling between Dr. Glascock and Dr. Lawrence, the court declines the motion, on the ground that these gentlemen do not seem to be personally friendly." The defendants excepted and assigned error. The court: "I understood, with the plaintiff's consent, that the plaintiff shall be examined by a physician selected by the defendants in the presence of Dr. Lawrence, but it appearing that Dr. Glascock, selected by the defendant, refused to go to the office of Dr. Lawrence, as there seems to be some feeling, I decline to order the plaintiff to be examined under the circumstances that have been mentioned."
22 C. J., p. 790, states the matter as follows: "A plaintiff cannot be compelled to submit to an examination by an expert in the presence of the jury, and the refusal of a request for such an examination is not rendered improper by the fact that the plaintiff afterwards offered to exhibit the injured member to the jury. But an expert may, at the instance of plaintiff, examine his injured member in the presence of the jury, and where plaintiff voluntarily exhibits the injured member to the jury, it may be examined by an expert on behalf of the defendant."
Under the facts and circumstances in the instant case, we think defendants had a right to have an expert examine plaintiff's injured member. This right does not extend except to the injured member or part of body that plaintiff voluntarily exhibits to the jury. In the trial of all cases the purpose is to ascertain the truth. The "inviolability of the person" is not lightly to be impinged, but where a plaintiff voluntarily waives the inviolability by exposing his person to accentuate the damage, it is but justice that at the instance of a defendant who may suffer by the exposure to have expert examination. In Haynes v. Trenton, 123 Mo., p. 336, it is said: "Defendant had the undoubted right in his case, at any time after the injuries had been shown to the jury to have physicians examine the injured leg and testify as experts to its character and probable permanency." In Pronskevitch v. C. A. Ry. Co., 232 Ill., p. 140, it is said: "Appellee having offered his body voluntarily to the inspection of the jury, it then became a subject of examination under such reasonable restrictions as the court might see fit to require. Inasmuch as appellee offered to submit to such an examination, in the presence of the jury, as the appellant might see fit to make, there was no just cause for complaint." Galveston, H. S. A. *Page 458 Ry. Co. v. Chojnacky, 163 S.W. Rep., p. 1012, the Court says: "The moment, however, he submitted his eyes for examination to the jury, he doffed the armor placed on his person by the hand of the law and was the subject of examination of experts."
Frequently attorneys representing opposing sides in injury cases agree to an examination in the interest of truth and justice, and the practice has become in recent years prevalent and to be commended. We have been unable to find any authority, and none has been called to our attention, where this Court has before passed on the question here presented. Under the facts and circumstances of this case we hold that when the plaintiff voluntarily exhibited the injured member, or part of the body, to the jury, the defendant had a right to the examination. It is for the trial court in its discretion to allow the examination "under reasonable restrictions" in the presence of the jury. One of defendants' requests was "in the presence of the jury." The old saying is applicable: "What is sauce for the goose is sauce for the gander." We think the weight of authority permits expert examination before the jury under the facts here. The whole subject is most interestingly discussed by Wigmore in his valuable work on Evidence, 4th Vol., 2 ed., sec. 2220. Lockhart's Handbook on Evidence, sec. 32; Chicago N.W. Ry. Co. v. Kendall, 167 Fed. Rep., p. 71; Louisville Nashville R.R. Co. v. Simpson, 111 Ky. Rep., 757; C. R. I. T. Ry. Co. v. Langston, 19 Texas, C. A. Rep., 572.
On the other issues the case has been carefully tried by the court below, the charge was fair and comprehensive, covering every phase presented, and the law carefully applied to the facts. The case is sent back only for trial on the fourth issue of damages.
For the reasons given, there must be a partial
New trial.