STACY, C. J., dissenting.
Plaintiff in this case, a salesman, was injured as the result of a collision of the automobile he was driving with that of another car, said accident occurring at the intersection of B and Broad streets, Durham, North Carolina. As a result of this accident he suffered a fractured skull, broken nose and other injuries. The defendants deny liability, contending that the accident did not arise out of and in the course of his employment.
The matter was heard before J. Dewey Dorsett, Commissioner, on 2 June, 1930. Upon the facts found by him and the conclusions of law, award was rendered in favor of plaintiff. Upon the entering of the award of J. Dewey Dorsett, Commissioner, the Commission caused formal notice thereof to be served on all parties on 14 June, 1930. The defendants duly appealed to the full Commission on 17 June, 1930, *Page 655 
notice of which was given all parties on 24 June, 1930. The Commission, pursuant to notice, reviewed the proceedings of Commissioner J. Dewey Dorsett, in Raleigh, on 5 July, 1930, and at the hearing before the full Commission it affirmed the award of J. Dewey Dorsett, Commissioner.
On 8 August, 1930, the Commission duly notified all parties of the confirmation of the award of J. Dewey Dorsett, Commissioner. The defendants gave notice of appeal to the Superior Court of Durham County. The record was thereupon duly certified and filed in the office of the Superior Court of Durham County, and the case docketed.
The cause came regularly on to be heard before his Honor, J. Paul Frizelle. The matter was heard upon the assignment of errors, and the court entered judgment at the February Term of Superior Court, 1931, as follows: "This cause coming on to be heard before the undersigned judge presiding in the Tenth Judicial District on appeal from award made to plaintiff in the above-entitled action by the Industrial Commission, and being heard, and after hearing the argument of counsel for plaintiff and defendant: It is ordered, considered and adjudged and decreed, that the award made in said action by said Industrial Commission be, and the same is hereby approved, and the judgment entered in said action by said Industrial Commission be, and the same is hereby affirmed. It is further ordered that the costs of this appeal be taxed against the defendant."
The evidence of plaintiff tended to show that he was injured at the intersection of Broad and B streets, in the city of Durham, about 7 o'clock, on the evening of 20 February, 1930. At the time of the injury he was employed as a salesman for Armour Company, and had been in the employment of the defendant, Armour Company, for about four and one-half years. He acted in the capacity of salesman and collector. That the defendant, Armour Company, furnished plaintiff with a Ford coupe automobile which he kept in his garage at his home on Duke Street. It had been his custom to store the company's car in his garage since his employment began. That it had been his custom to make trips after business hours in the interest of his employer, and that as a matter of fact he had no regular hours, but it was a rule to begin work about seven o'clock in the morning and sometimes he would get back at three o'clock in the afternoon and sometimes it would be eight or ten o'clock in the evening; that he had no regular hours for the reason that he worked until his duties were performed. That he lived on the west side of Duke Street. Paschall's Bakery is also located on the west side of Duke Street. About six o'clock in the evening, 20 February, 1930, plaintiff had called M. J. Paschall about some shortening that had been left at his bakery and made an engagement to see him at his bakery in the evening. That he went by the *Page 656 
bakery about six o'clock, but found a number of customers in the bakery, after which he went directly home and ate supper with the intention of returning to the bakery as soon as supper was over; that he knew Mr. Paschall did not leave his bakery before seven-thirty. That he left home at seven-thirty for the bakery, but found he had no cigars, cigarettes or chewing tobacco in his pocket, and started in the direction of the University Pharmacy on Broad Street. Plaintiff's automobile was headed north on Duke Street and on the west side of said street. In order to reach the pharmacy he drove in a northerly direction to Green Street, followed Green Street westward two blocks until he reached Watts Street. After reaching Watts Street he turned north on Watts and traveled about thirty feet until he reached B Street. He then drove along B Street in a westerly direction about seven city blocks to Broad Street, at which point the collision between an automobile driven by another person and the one driven by plaintiff took place.
It was in evidence that at the time of the collision plaintiff sustained severe and permanent injuries. His nose was broken, his skull fractured and his collar bone broken. He had a "Y" shaped fracture running from his ear to the base of the skull on the left side. Plaintiff was injured on 20 February, was confined to Watts Hospital thirty-one days, and did not return to his work until 12 May, 1930.
The full Commission found:
"1. The parties to this proceeding are bound by the provisions of the Compensation Act of 1929, the Western Casualty Company, an intervening party defendant, is the insurance company.
2. The plaintiff was a regular employee of the defendant, and on the evening of 20 February, 1930, suffered an accident that arose out of and in the course of his employment. (Exception by defendants.)
3. At the time of the accident the average weekly wage earned by the plaintiff was in excess of $30.00.
4. As a result of the accident the plaintiff has been totally disabled from 20 February, 1930, to 2 May, 1930, on which later day he returned to work in the same capacity and at the same salary, although not physically able to return to work.
5. As a result of the accident the plaintiff has suffered a most serious facial disfigurement causing facial paralysis sustained as a result of the accident.
6. As a result of the accident the plaintiff has sustained complete loss of hearing of his left ear. (Exception by defendants.)
7. The facial paralysis suffered by the plaintiff and the complete loss of hearing of the left ear is a permanent condition.
8. That the plaintiff, on the night of the occurrence of the accidental injury, would not have deviated but approximately 3,500 feet from the *Page 657 
most direct route from his home to Paschall's Bakery, his destination, had not his contemplated trip been interrupted by the accident.
9. That the defendant, Armour Company, had at no time either on this occasion, or any other time, authorized the plaintiff to give to customers or prospective customers, cigars, cigarettes, chewing tobacco or similar articles, not had the plaintiff ever been reimbursed by defendants, Armour Company, for any expenditures made for any such articles."
The defendants made numerous exceptions and assignments of error and appealed to the Supreme Court. The necessary assignments of error and other material facts will be considered in the opinion.
The first question involved: Did the accident resulting in the injury to Ewell C. Parrish, the plaintiff, arise out of and in the course of his employment? We think so.
Public Laws 1929, ch. 120, known as the North Carolina Workmen's Compensation Act, sec. 2(f), is as follows: "`Injury' and `personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form except where it results naturally and unavoidably from the accident."
In Davis v. Veneer Corp., ante, at p. 265-6, the law is stated: "In order that compensation may be due the injury must arise out of and also be received in the course of the employment — neither alone is enough. It is not easy. . . . to give comprehensive definition of these words. . . an injury received, in the course of the employment when it comes while the workman is doing the duty which he is employed to perform. It `arises out of the employment' when there is . . . a casual connection between the conditions under which the work is required to be done and the resulting injury. . . . If the injury can be seen . . . . to have been contemplated by a reasonable person familiar with the whole situation, . . . then it `arises out of the employment.' The causative danger must be peculiar to the work and not common to the neighborhood." Chief Justice Rugg inMcNichol's case, 102 N.E. 697 (Mass.), N.C. Industrial Commission Report, 131. Similar definition occurs in the case of Wirta v. North ButteMining Co., 210 P. 332, 30 A.L.R., 964, in these words: "The words `in the course of an employment' refer to the time, place, and circumstances under which the accident took place, and an accident arises `in the course of the employment' if it occurs while the employee is doing the duty which he is employed to perform." *Page 658 
The plaintiff was a salesman for defendant, Armour Company. His duties were to sell their products and collect for them. Paschall's Bakery was a customer and there was "some mix-up he had on shortening." Paschall and plaintiff had an engagement to meet to straighten the matter out the evening plaintiff was injured. Plaintiff went to Paschall's place of business about 6 o'clock, but he was busy with customers. Plaintiff drove home, ate his supper and on his way back to meet the engagement with Paschall, he deviated about 3,500 feet to go by the University Pharmacy, where he ran an account, to purchase some cigars, etc., as he was out of them, and that was the closest way to get them on his way to meet his appointment. He was injured as a result of a collision in going the round about way.
Plaintiff testified, in part: "On the night of the injury I was in the company's automobile. It was a Ford coupe. I keep the car in the garage at my home on Duke Street. That had been my custom ever since my employment. It was the custom to make trips after business hours in the interest of my employer. I do not know what you mean by hours — we never know hours. There is a rule among ourselves that we get there about seven in the morning and sometimes we get there at three in the afternoon and sometimes eight and ten in the evening. I work until my duties are performed. . . . I have been working for Armour Company four and one-half years. I have no hours of work. I work until I perform my duties of the day. When the accident occurred I had not reached the drug store. I was going the most direct route to the drug store to get the cigars, at the time of the injury. Q. Was it ever customary for you salesmen to carry cigars for the convenience of your prospective customers. A. It is. Yes, Mr. Dorsett, I can't say for the others, but it is a custom of mine to always have cigars, cigarettes and chewing tobacco. Q. When you left your home that evening did you leave for the purpose of going to Paschall's Bakery or the drug store? A. To the bakery. Q. And it was a mere incident that you went to the drug store? A. Yes, sir. Had it not been for the bakery I would not have gone to the drug store. . . . I would not have gone by the drug store but for the fact that I was going to Paschall's Bakery that night. My ultimate objective was to go to the bakery."
In Duncan v. Overton, 182 N.C. at p. 82, is the following: "The father having placed his son in charge of the machine to bring it from Nashville to the A. and E. College at Raleigh, and thence to the garage, is responsible for injuries accruing from the negligence of his agent while in charge of the machine on that errand, and is not released therefrom by an accidental divergence in discharging the duty entrusted to him before the driver reached the garage, such as is testified to in this case." Jeffreyv. Mfg. Co., 197 N.C. 724. *Page 659 
"Plaintiff's deceased was employed during the nighttime at a produce commission house. He had begun work at midnight, and, at about 4 a.m., together with a customer to whom he had been talking, regarding some products which he wished to buy, he crossed the street to go to a restaurant for a cup of coffee, as was the custom among employees. He was struck by a motor truck, and died as a result of his injuries. Affirming an award, the Court held that crossing the street to get a cup of coffee did not constitute an abandonment of the employment under the circumstances, and that deceased's injuries arose out of and in the course of his employment. Clark v. Voorhees, 194 N.Y. App., Div., 13, 184 N.Y. Sup., 888 (1920). The case ofRainford v. Chicago City Ry. Co., 289 Ill.,124 N.E. 643 (1919), affirming 213 Ill. App. 648 (1919), was an action at law against an employer to recover damages for personal injuries. The principal question in the case, however, was whether the accident arose out of and in the course of the plaintiff's employment within the meaning of the compensation act. The facts were as follows: Plaintiff was a conductor in the employ of the defendant. His run ordinarily terminated at a point where there was a restaurant and where there was a stopover of a few minutes that he might procure lunch. On the occasion in question his run had been extended to a point where there was no lunch room at the lunch period. However, the car passed in close proximity to his home at an intermediate point, and he requested the motorman to stop at his home that he might order lunch prepared so that he could pick it up on his return trip and eat it at the end of the run. When the car stopped, as requested by him, he started to cross the adjacent track and was struck by a car while thereon and injured. Affirming a judgment of the appellant court which had sustained a judgment of the Superior Court in plaintiff's favor, the Court held that the accident arose out of and in the course of plaintiff's employment, saying: `That which is reasonably necessary to the health and comfort of an employee, although personal to him, is incidental to the employment and service. . . . It cannot be doubted that it was reasonably necessary and incidental to his employment that the plaintiff should have his lunch at the time and place allowed by the defendant for that purpose, and if it was reasonably necessary and proper for him to attempt to make the arrangement he did, then, as a matter of law, the injury did arise out of and in the course of his employment." 20 Negligence Compensation Cases (Anno.), at pp. 559-560.
The plaintiff was on duty for Armour Company, when he left his home to see the customer, and the deviation for the cigars, etc., we do not think such as would bar his recovery under the Liberal Construction generally given by this and other courts to the Workmen's Compensation Act. We think plaintiff's injury was "by accident arising out of *Page 660 
and in the course of the employment." When plaintiff left home he was on duty for his employer, and the deviation was incidental to his employment.
In D'Aleria v. Shirey, 286 Fed. Rep., at p. 525, we find: "If a servant, while about his master's business, makes a deviation of a few blocks for ends of his own, the master is nevertheless liable," citing numerous authorities. Jones v. Weigand, 134 Appellate Div. of N.Y. Reports, 654;Bryan v. Bunis, 208 Appellate Div. of N.Y. Reports, 389; Taylor v. HoganMilling Co., 129 Kan. 370, 66 A.L.R., 752.
Speaking to the subject in Pollock on Torts, 6th ed., at p. 84, we find: "Whether the servant is really bent on his master's affairs or not is a question of fact, but a question which may be troublesome. Distinctions are suggested by some of the reported cases which are almost too fine to be acceptable. The principle, however, is intelligible and rational. Not every deviation of the servant from the strict execution of duty, not every disregard of particular instructions, will be such an interruption of the course of employment as to determine or suspend the master's responsibility. But where there is not merely deviation, but a total departure from the course of the master's business, so that the servant may be said to be `on a frolic of his own,' the master is no longer answerable for the servant's conduct."
We think the above author analyzes the matter clearly and succinctly. The decisions are in conflict in the different jurisdictions.
In Williams v. Thompson, ante, at p. 465, we find: "The findings of fact by the Industrial Commission in a hearing before them is conclusive upon appeal when there is sufficient competent evidence to sustain the award.Southern v. Cotton Mills, ante, 165."
This exception and assignment of error by the defendants cannot be sustained.
The second question: Was there any evidence to support the finding by the Commissioner to the effect that the claimant sustained a complete loss of hearing in the left ear? We think so.
Public Laws 1929, ch. 120, sec. 30(s), is as follows: "For the complete loss of hearing in one ear, sixty per centum of average weekly wages during seventy weeks; for the complete loss of hearing in both ears, sixty per centum of average weekly wages during one hundred and fifty weeks."
The Commission found "As a result of the accident the plaintiff has sustained complete loss of hearing of his left ear."
Without reviewing it, as the evidence is heretofore set forth, we think that there was sufficient competent evidence to sustain this finding of fact; that being the case, the finding is binding on us. Public Laws 1929, ch. 120, supra, sec. 60, in part is as follows: "The award of the Commission, as provided in section fifty-eight, if not reviewed in due *Page 661 
time, or an award of the Commission upon such review, as provided in section fifty-nine, shall be conclusive and binding as to all questions of fact," etc.
We do not think this exception and assignment of error by the defendants can be sustained.
From a careful review of the case, the judgment of the court below is
Affirmed.