JAMES McLAMB AND J. B. PARRISH v. CHARLES L. BEASLEY.

(Filed 30 October, 1940.)

**1. Master and Servant § 21b—**

The master is liable for a negligent injury inflicted on a third person by the servant when the servant is acting in the course of his employment and is at the time about the master's business, but is not liable for such injuries when the servant is acting outside of the legitimate scope of his authority and is engaged in some private matter of his own, it being necessary that the relation of master and servant exist at the time of, and in respect to the very transaction out of which injury arises.

**2. Same—**

As a general rule, the servant is not in the course of his employment while going to and returning from his work.

**3. Automobiles § 24—Evidence held insufficient to be submitted to the jury on the issue of respondeat superior.**

Defendant's truck driver, at the conclusion of the day's work, drove to a nearby town where he drank some whiskey, and while driving from the town to his home, negligently ran into the rear of a wagon on the highway, causing injury to both plaintiffs. Plaintiffs' evidence tended to show that defendant permitted the driver to keep or "store" the truck at his home at night and to use the truck in going to and from his work, but that there was ample parking space at defendant's store affording equal protection for the truck, that the driver had on occasion made deliveries on the way home but that no deliveries were made on the night in question, that no deductions were made from the driver's salary by reason of the fact that he was permitted to so use the truck, and defendant's bookkeeper, as a witness for plaintiffs, testified that if anything had to be delivered after the store was closed the driver would have been called upon to make the delivery, but that he had never known the driver to be so called, but that the driver was permitted to so use the truck solely as a matter of personal accommodation. *Held:* The evidence relating to deliveries after the close of the store merely indicates the loyalty of the employees and in nowise supports the inference that the driver was permitted to take the truck home in order to be able to make such deliveries, and the evidence discloses that the use of the truck by the driver in going to and from his work was gratuitous and not a part of the contract of employment, and, there being no contention of liability on any ground other than *respondeat superior*, defendant's motion for judgment as of nonsuit should have been granted.

CLARKSON, J., dissenting.

APPEAL by defendant from *Thompson, J.,* at February Term, 1940, of JOHNSTON.

Civil actions to recover damages for alleged negligent injuries, by consent consolidated and tried together, as the two actions arise out of the same state of facts.

William Hood, while driving a truck along the Smithfield-Angier highway on the night of 18 February, 1939, negligently ran into the rear of a wagon in which the two plaintiffs were riding and injured both of them. Hood was employed as a handy man around the defendant's store and was the regular driver of the delivery truck which he was using on the night in question. At the conclusion of the day's work, Hood drove the defendant's truck to Smithfield, there drank some liquor, and was on his way home when the accident occurred. He was drunk.

It is in evidence that Hood had customarily used the defendant's truck in going to and from his home; that he lived about three miles from the defendant's store; that he regularly kept the truck in his yard at night, and this with the knowledge and consent of the defendant; that the store furnished the gas and oil for the truck, and "there was usually enough in there for him to go home in the evening and come back in the morning"; that no deductions were made from his salary for the use of the truck; that Hood's use of the truck in going to and from his home was purely a matter of accommodation and gratuity to him, and that the defendant in no way benefited therefrom. "There was plenty of parking space at the store to keep the truck," where the other trucks were kept. "It was not more protected than it would have been down at the store." Hood had been keeping the truck in his possession at night for five years. "That storage place was known to Mr. Beasley," says the defendant's bookkeeper. "I never did get any instructions to change the storage place. I have known Hood to make deliveries on his way home." No deliveries were made on the night of the accident. The truck was empty at the time. The bookkeeper further testifies: "Hood's employment was driving that truck. After he finished he was permitted to go home in the truck and come back to his work in the morning. The use of the truck after the store closed in going to his house was just purely a matter of permission and accommodation to him. . . . The use of the truck in going to and from his home was not for the accommodation of the store, but for William Hood's sole and single personal accommodation."

At the close of plaintiffs' evidence the defendant moved for judgments of nonsuit. Overruled; exception. The defendant offered no evidence, but relied upon the testimony of his bookkeeper as offered by the plaintiffs.

From verdicts and judgments for plaintiffs, the defendant appeals, assigning error.

*Wellons & Wellons and Douglass & Douglass for plaintiffs, appellees.*
*A. J. Fletcher, Franklin T. Dupree, Jr., J. C. B. Ehringhaus, and Chas. Aycock Poe for defendant, appellant.*

McLAMB *v.* BEASLEY.

STACY, C. J.    The single question presented by the appeal is the sufficiency of the evidence to carry the cases to the jury.

The plaintiffs contended with quite good fortune in the court below that Hood's use of the truck under the circumstances was such as to warrant the inference that it was being driven to his home for storage or safe keeping during the night; that he was, therefore, about his master's business at the time of the injury, and that plaintiffs are entitled to recover on the theory of *respondeat superior*.

It is true the defendant's bookkeeper is led to speak of Hood's yard as a storage place for the truck at nighttime, albeit there was plenty of room at the store where the other trucks were kept.    In view of the same witness' positive testimony that Hood's use of the truck after closing hours in driving to his home was not for the benefit of the defendant but for "Hood's sole and single personal accommodation," we think it would be somewhat chimerical to say the truck was being operated for and on behalf of the defendant at the time of the collision.    The compelling facts speak louder than the suggested inference.    *Harrison v. R. R.,* 194 N. C., 656, 140 S. E., 598.    There was no more protection for the truck in Hood's yard than at the defendant's store.    The same stars shine at both places.

It is conceded that unless Hood was engaged in the work of the defendant "at the time of and in respect to the very transaction out of which the injury arose," the plaintiffs are not entitled to recover.    *Liverman v. Cline,* 212 N. C., 43, 192 S. E., 849; *Van Landingham v. Sewing Machine Co.,* 207 N. C., 355, 177 S. E., 126; *Jeffrey v. Mfg. Co.,* 197 N. C., 724, 150 S. E., 503; *Tyson v. Frutchey,* 194 N. C., 750, 140 S. E., 718; *Grier v. Grier,* 192 N. C., 760, 135 S. E., 852; *Reich v. Cone,* 180 N. C., 267, 104 S. E., 530.

It is elementary that the master is responsible for the tort of his servant which results in injury to another when the servant is acting in the course of his employment, and is at the time about the master's business. *D'Armour v. Hardware Co.,* 217 N. C., 568; *Barrow v. Keel,* 213 N. C., 373; *Roberts v. R. R.,* 143 N. C., 176, 55 S. E., 509.    It is equally well established that the master is not liable if the tort of the servant which causes the injury occurs while the servant is acting outside the legitimate scope of his authority, and is then engaged in some private matter of his own.    *Tribble v. Swinson,* 213 N. C., 550, 196 S. E., 820; *Parrish v. Mfg. Co.,* 211 N. C., 7, 188 S. E., 897; *Bucken v. R. R.,* 157 N. C., 443, 73 S. E., 137.

As a general rule the servant is not in the course of his employment while going to and returning from his work.    This is essentially his own task.    See *Bray v. Weatherly Co.,* 203 N. C., 160, 165 S. E., 332, and cases there cited.

McLamb *v.* Beasley.

At present we are not concerned with a case where the servant uses the master's car in traveling to and from his work as a part of his compensation or in furtherance of the master's business. Nor are we confronted with a case where such use of the master's car is for the benefit of the master as well as the servant. *Williams v. R. R.,* 190 N. C., 366, 129 S. E., 816. A fair interpretation of the record reveals a case in which the servant is permitted to use the master's truck in going to and from his home purely as a matter of accommodation to the servant. It is not the policy of the law to extend the legal relationship of master and servant, with its reciprocal duties and liabilities, to cover such a case. The gratuitous and permissive use by Hood of the defendant's truck in traveling back and forth between his home and place of work, under the circumstances disclosed by the record, is not sufficient to warrant the inference that such use of the truck became by implication a part of the contract of employment. *Distributing Corp. v. Drinkwater,* 81 F. (2d), 200.

It was said in *Hunt v. State,* 201 N. C., 707, 161 S. E., 203, that "the employee is in the course of employment if he has a right to the transportation, but not if it is gratuitous, or a mere accommodation."

A careful perusal of the whole record impels the conclusion that Hood's use of the defendant's truck on the night in question was for his own purposes, first, in going to Smithfield, and, second, in returning home. *Wilkie v. Stancil,* 196 N. C., 794, 146 S. E., 296. The defendant had no control over him at the time. Hood was his own master while driving home. This defeats recovery on the theory of *respondeat superior. Martin v. Bus Line,* 197 N. C., 720, 150 S. E., 501. The doctrine is inapplicable where there is no superior to respond. *Standard Oil Co. v. Parkinson,* 152 Fed., 681.

The plaintiffs stress the statement of the defendant's bookkeeper that the truck was in Hood's care at night, "and if anything should have to be hauled or delivered after the store was closed, we could get in touch with him and he would do it." He added, however, that if Hood had ever been called after closing hours, he knew nothing of it. "Not in all the time I worked there did I ever know Hood to be called on during the night. He was simply working there, and we all felt, if an emergency arose, we were liable to be called on." This evidence, in its entirety, expresses no more than a sense of loyalty on the part of all the employees of the defendant. It is to be commended rather than held for liability. It does not even carry the suggestion that Hood had the truck in order that he might be accessible after closing hours or at nighttime. Thus, on this record, to say that Hood was acting in the course of his employment at the time of the injury would be to tax the generosity of

the defendant, and place the law at variance with kindly impulses and generous treatment.

Speaking to a similar situation in *Gewanski v. Ellsworth,* 166 Wis., 250, 164 N. W., 996, *Rosenberry, J.,* delivering the opinion of the Court, said: "While it is true that fair and generous treatment on the part of the master is likely to produce a corresponding sense of loyalty on the part of the servant, it cannot be said that such treatment of a servant by a master in any way promotes or facilitates the master's business in a legal sense. It is to the benefit of both master and servant that their relationship should be pleasant and harmonious, but the effort of the master to accommodate and assist the servant does not bring within the scope of the master's employment acts of the servant otherwise without such scope."

It is not suggested that plaintiffs are entitled to recover on any other theory. There is no evidence that Hood was a reckless driver or that his drinking was known to the defendant. *Taylor v. Caudle,* 210 N. C., 60, 185 S. E., 446.

There was error in overruling the defendant's motion for judgments as in cases of nonsuit.

Reversed.


CLARKSON, J., dissenting: The facts: It is charged by plaintiff that William Hood, at about 8:00 p.m. on 18 February, 1939, carelessly, recklessly, willfully and wantonly, while under the influence of intoxicating liquor, in operating a certain truck owned by defendant and acting in the scope of his employment, in violation of law, ran into the wagon driven by J. B. Parrish, in which plaintiff McLamb was a guest, knocking said wagon to the left across said road into the ditch and throwing said wagon on top of the mule, and knocking the plaintiff from said wagon violently to the ground, knocking out two of his front teeth, cutting an ugly wound in his lower lip, severely bruising and dislocating his right shoulder, wrenching his back, and lacerating and bruising the plaintiff in numerous places, severely and permanently. Like allegations were made by J. B. Parrish, except that he was driving the wagon. He was permanently injured. The cases were consolidated.

The first issue submitted to the jury: "Was the plaintiff injured by the negligence of William Hood, an employee of the defendant, as alleged?"

It was conceded by defendant that the evidence in the cases was sufficient for the jury to find an affirmative answer to the first issue, and defendant conceded that the jury could answer the issue in each case "Yes."

The second issue: "If so, was said William Hood at the time of the alleged injury to plaintiff acting within the scope of his employment, as alleged in the complaint?"

On both issues the jury answered "Yes" and to the third issue assessed damages. The only question on this appeal: Was William Hood "acting within the scope of his employment?"

The record discloses: "1. The plaintiffs were injured by the defendant's truck. 'He was operating Mr. Beasley's pick-up. . . . I am familiar with the truck Hood was operating. . . . Mr. Beasley's sign was painted on the truck.' 2. The collision occurred on Saturday night around eight o'clock. 'I would say it was about 8 o'clock. I didn't have any watch.' 3. 'It was usually closed by 8 o'clock. That is what I say.' 4. Hood was the regular driver of the truck that injured the plaintiffs. 5. Hood lived on the Angier Road, about three miles from defendant's store. 6. The wreck occurred about halfway between defendant's store and Hood's home, and the truck was headed toward Hood's home. 7. Hood's home was the regular storage place for the truck; and it was used by Hood daily in going to and from the store. 'This truck was kept at William Hood's house at night. That is around three miles from where he works. He got to and from his work on this truck. I know that of my own knowledge. In going to and from work William Hood passed the road I live on every day. I didn't notice what was in the truck that night.' " Another witness said: "I have seen it there early in the morning and late in the evening." Another said: "I know he regularly went by my home night and morning on the truck. Early in the morning in time to go to work and late in the evening." Another said: "Hood has been working for Mr. Beasley a good many years. . . . I have seen this truck at his home on numerous occasions at night." The witness Whitley said: "He passed my residence with it regularly night and morning. In the morning he would be coming from toward home and going toward Beasley's store. In the evening he would be coming from toward Beasley's store and going in the direction of his home."

W. Leon Johnson testified for plaintiff, in part: "On February 18, 1939, I was employed with C. W. Beasley & Son as bookkeeper and manager. William Hood was employed by Mr. Beasley. He was a truck driver. He drove the delivery truck and helped around the store, and did odd jobs around the store. He was the regular driver of that truck. Q. State whether or not he regularly kept that truck at his home at night. Ans.: Yes, sir, he has been keeping the truck. I have been working there for five years, and the truck was in his possession there every night. It was kept with Mr. Beasley's knowledge and consent. There were no deductions made in the salary of William Hood for the

McLamb v. Beasley.

gasoline and oil used in going from the store to his home and from his home to the store. The store furnished the gas and oil for the truck, and there was usually enough in there for him to go home in the evening and come back in the morning. I would not say that William Hood was any more subject to be called at night than me or any of the rest of them, *but the truck was in his care, and if anything should have to be hauled or delivered after the store was closed we could get in touch with him and he would do it.* Q. State whether or not William Hood at times continued to deliver after the closing of the store. Ans.: Well, most of the time I would leave the store—I would leave there thirty minutes or an hour before they would close the store, but just now and then I would be there when the store would close. And on several occasions he would be through delivering everything that was going *except a few things maybe, that were going right out from the store up the road a little ways, and he would put them in the truck and take them as he would go on home.* (Re-direct examination) Q. Where was the regular storage place of this truck, of this particular truck that was driven by William Hood during the night of February 18, 1939, prior thereto and subsequent thereto? Q. The regular storage place at night for that truck? Ans.: Well, William Hood had been keeping the truck at his home. I had been working there for five years. He had been keeping the truck in his possession all the time I was over there. That storage place was known to Mr. Beasley. *I never did get any instructions to change the storage place. I have known Hood to make deliveries on his way home."*

The main opinion bases the nonsuit on the cross-examination of Johnson. The main opinion does not give precisely what he said, and, interpreting rather than quoting from the record, says: "That Hood's use of the truck in going to and from his home was purely a matter of accommodation and *gratuity to him,* and that the *defendant in no way benefited therefrom."* The actual language is: "Hood's employment was driving that truck. After he finished he was permitted to go home in the truck and come back to his work in the morning. The use of the truck after the store closed in going to his house was just purely a matter of permission and accommodation to him. There was plenty of parking space at the store to keep the truck. Q. The use of the truck in going to and from his home was not for the accommodation of the store, but for William Hood's sole and single personal accommodation? Isn't that right? Ans.: Yes, sir, I *expect* so."

The main opinion is a conclusion not supported by the record. The witness Johnson said the use of the truck was "purely a matter of permission and accommodation to him," and as to "sole and single personal accommodation" he wavered and was uncertain and said "I expect so." This was a conclusion or supposition. He did not say it was a "gratuity

to him," nor did he say "that the defendant in no way benefited there-from." Conclusions on facts are not for the witness or this Court—they are matters for the jury to determine on all the facts and circumstances, based on both direct and circumstantial evidence. The employee used the gas of defendant in going home and returning, its cost was paid by defendant for five years, as is admitted by the record. Assuming six days, coming and going, 24 days a month, amounting in a year to 288 days, 5 years is 1,440 days, 6 miles a day would be 8,640, or more than one-third the distance around the world. Further estimating 15 miles to the gallon, and gas 20c a gallon, this would total $115.20. It is almost inconceivable that, under the facts of this case, the master "gave" to the servant as an outright *gratuity* the sum of $115.20.

This payment of gas and the other evidence set forth makes it a matter for the jury to determine and not for us. The court below gave defendant, on the testimony of Johnson, all and perhaps more from the Johnson testimony than defendant was entitled to. "As I told you, gentlemen of the jury, in order for the plaintiffs to sustain the burden which the law places upon them with respect to this second issue, and in order to entitle the plaintiff in either case to an affirmative finding on your part, the burden is upon the plaintiff in each case to satisfy you by the evidence and by its greater weight of the truth of his contentions with respect to the second issue. Now, gentlemen of the jury, it is conceded that the motor truck in question was owned by Mr. Beasley, and that with his permission it was used by William Hood in going to and from his home, but Mr. Beasley would not be liable for any negligent operation of that motor truck on the part of William Hood if the motor truck was being used by William Hood *solely for his own convenience* and not as incidental to, or in aid of, the business of C. L. Beasley. The employer's liability, that is, Beasley's liability, in cases of this kind depends upon whether the conveyance, that is, the motor truck in question, had been provided by him after the beginning of employment in compliance with *one of the implied or express terms* of the contract of employment for the mere use of the employee William Hood, and one which the employee William Hood was required or as a matter of right was permitted to use by virtue of that contract pursuant to that rule. William Hood would be in the course of his employment if he had a right to the transportation but not, gentlemen of the jury, if the transportation was gratuitous, a mere accommodation to him. The defendant contends and says further that according to the testimony of plaintiff's own witness, Mr. Johnson, who was employed at the store in February, 1939, was bookkeeper, that this truck was used by Hood only by his, Beasley's permission; that Johnson testified from the witness stand, when he was plaintiff's witness, that the truck was used as a matter of

McLamb v. Beasley.

pure accommodation, not to Beasley but to Hood, in order to allow him to go back and forth from his home to his work quicker and easier than he otherwise would have been able to have done; that it was for Hood's pure accommodation and nothing else that he was permitted to use it. He says and contends, gentlemen of the jury, that you should accept Mr. Johnson's version about that."

This Court must stand by the ancient landmark—the jury—to determine the issue of facts, and should be slow to take from the jury facts as disclosed from this record.

The defendant did not testify, but at the close of plaintiff's evidence made a motion for judgment as in case of nonsuit. C. S., 567. The motion was overruled and the cases were submitted to the jury. It is well settled in this jurisdiction that the evidence is to be taken in its "most favorable light for plaintiff" and he is entitled to the benefit of every "reasonable intendment" and every "reasonable inference" to be drawn therefrom.

In *Williams v. R. R.*, 190 N. C., 366, *Stacy, C. J.,* writing the opinion, at p. 366, it is said: "Defendants earnestly contend that the nonsuit in favor of the Garysburg Manufacturing Company should be sustained and that the verdict in favor of the Atlantic Coast Line should be upheld, but we think there was more than a scintilla of evidence offered on the hearing tending to establish the plaintiff's position as against both defendants, which was sufficient to carry the matters to the jury for its consideration and determination. . . . (pp. 367-8) The nonsuit in favor of the manufacturing company was allowed upon the theory that the truck in question has been borrowed by plaintiff's intestate and was being operated under his direction and control at the time of the collision by one Connie Williams. Defendant contends that plaintiff's intestate was engaged in transporting laborers from the Long Creek section to Burgaw on his own responsibility and that it was distinctly understood between them that no liability should attach to the defendant, manufacturing company, by reason of the use of its truck. There was evidence tending to support this view of the case. Plaintiff, on the other hand, takes the position that the laborers were being transported by the defendant manufacturing company, and for its benefit. As bearing on this phase of the case, Connie Williams testified as follows: 'I live at Long Creek, and Ed Williams lived at Long Creek. About 17 or 18 of us lived in the Long Creek section, about 9 or 10 miles from Burgaw. *The Garysburg Company furnished the truck for us to go back and forth home and back here to our work. Once a week I drove the truck for that purpose, every Saturday night and Monday morning.* We had to come to Burgaw before we went to work, and were required to be there at 5:30; then we got on the train and went in the woods, about

McLamb *v.* Beasley.

10 miles, where we were working. Saturday evening when we got back and got our pay we went home on the truck. We all worked for the Garysburg Company. *On this evening I got the truck out of the house near the office—the Garysburg Company exercised dominion over that property—and I drove it down here and got some gas, over at Mr. Davis', did some shopping and started home. I did not pay for the gas, nor did anyone riding in the truck pay for it; it was charged to the company.'* We think this evidence was sufficient to carry the case to the jury under the principle announced in *Tanner v. Lumber Co.,* 140 N. C., 475, and contended for by plaintiff in the present action, that where the master undertakes to furnish his laborers transportation to and from their work, it is his duty, in the exercise of ordinary care, to see to it that such transportation is rendered as reasonably safe as the character of it will permit. See note to *Thomas v. Wisconsin C. R. Co.,* as reported in 23 L. R. A. (N. S.), 954, where the authorities on the subject are collected and reviewed by the annotator." (Italics mine.)

In *Fleming v. Holleman,* 190 N. C., 449 (456), is the following: "W. L. Holleman testified: 'I used this car in going backward and forward. On this night in question I was driving a Ford that belonged to Armour & Company, which car I kept at my home. On 19 February, 1924, I drove this car toward my home. . . . Have been using it constantly since then. I only use this car on the company's business. At the time of the accident I was on my way home.' I think all the evidence on this phase sufficient to justify the court below in the charge as given. *Williams v. R. R., ante,* 366." *Mehaffey v. Construction Co.,* 197 N. C., 22.

Mere ownership of automobile does not render one liable for injuries from operation by another. *Martin v. Bus Line,* 197 N. C., 720. Owner loaning truck to another held not liable for injuries in collision without evidence that borrower's driver was incompetent. *Tyson v. Frutchey,* 194 N. C., 750. In an action for injuries, caused by the alleged agent of defendant driving defendant's automobile into plaintiff, the ownership of the automobile was evidence from which the jury might infer that it was being used in defendant's business at the time of the injury. *Freeman v. Dalton,* 183 N. C., 538.

In *West v. Baking Co.,* 208 N. C., 526, it appeared that the truck was being driven by defendant's employee. This Court held there was sufficient evidence from which the jury could *infer* that the servant was acting within the scope of his employment. *Adams v. Foy & Shemwell,* 176 N. C., 695; *Misenheimer v. Hayman,* 195 N. C., 613; *Phifer v. Dairy Co.,* 200 N. C., 65; *Parrish v. Armour & Co.,* 200 N. C., 654; *Lazarus v. Grocery Co.,* 201 N. C., 817; *Edwards v. Loving,* 203 N. C., 189; *Dickerson v. Reynolds,* 205 N. C., 770; *Barrow v. Keel,* 213 N. C., 373;

*Smith v. Gastonia,* 216 N. C., 517, holding that scope of employment was for the jury.

Evidence showing plaintiff was injured by negligent operation of truck, operated by regular driver pursuant to orders, made *prima facie* case against owner of truck. *Lazarus v. Grocery Co., supra.*

In the recent case of *Smith v. Gastonia, supra* (216 N. C., 517), at p. 519, *Seawell, J.,* used this language: "The sole question in controversy here is as to whether the decedent was at the time of his injury and death in the exercise of any of the duties of his employment or in the enjoyment of its protection. Nothing else appearing, an employer is not liable for accidents occurring to an employee while going to or returning from the employer's premises in order to begin his work or after its conclusion, and an accident so occurring is not held to arise out of and in the course of the employment. *Bray v. Weatherly & Co.,* 203 N. C., 160, 161, 165 S. E., 332, 94 A. L. R., 589. *But the authorities seem to be uniform to the effect that where the employer furnishes the means of transportation to and from the place where the service is performed as an incident to the contract of employment an injury suffered by the employee while going to and from work is compensable"* (italics mine), citing *Phifer v. Dairy Co., supra; Jackson v. Creamery Co.,* 202 N. C., 196; *Bellamy v. Mfg. Co.,* 200 N. C., 676; *Parrish v. Armour & Co.,* 200 N. C., 654; *Massey v. Board of Education,* 204 N. C., 193, and cases cited.

We think the learned judge in the court below, under the authorities of this and other jurisdictions, took the correct view in refusing to grant the nonsuit requested by defendant, and that he also charged the jury correctly. The law, we think, is settled in favor of the position taken by the court below.

From other cases and text writers, the rule laid down is as follows: "The tendency of the courts is to enlarge the field of operation of the doctrine of *respondeat superior.* The doctrine is bottomed on the principle that he who expects to derive advantage from an act done for him by another should answer for any injury which a third person may sustain from the act. The rapid industrial and commercial progress of the times had brought about conditions which render it expedient in the interests of the community to extend the application of the rule that every man, in the management of his affairs, whether by himself or by his agents or servants, shall take care not to injure another, for only by imposing vicarious liability upon employers can vigilance be secured in the selection and supervision of employees to the end that those who are incompetent or reckless may be weeded out." *Elliason v. Western Coal & Coke Co.,* 202 N. W., 485, 162 Minn., 213.

"However, where a master places at the disposal of his servant an automobile to be used by the servant in going to and from his work, and where the transportation is beneficial to both, the relation of master and servant continues while the automobile is used for such purpose; also if the employer, as an incident of contract, furnishes transportation, injury to employee going to and from place of employment 'arises out of and in the course of employment.'" 5 Cyc. of Automobile Law and Practice (Blashfield), sec. 3041, pp. 197-8. Under the above section is cited *Phifer's Dependents v. Foremost Dairy, Inc.,* 200 N. C., 65, 156 S. E., 147. In that case, *Adams, J.* (citing a wealth of authorities), says, at pp. 66-7: "While there is diversity of opinion on the question, the weight of authority sustains the conclusion that if an employer furnishes transportation for his employee as an incident of the employment, or as a part of the contract of employment, an injury suffered by the employee while going to or returning from the place of employment in the vehicle furnished by the employer and under his control arises out of and in the course of the employment. . . . (p. 68) While the employee's actual work began at a designated place, yet to go there was an act within and necessary to his service."

In 7-8 Cyc. of Automobile Law (Huddy), 9th Ed., sec. 94, at p. 251, we find: "Use to enable driver to reach work earlier. Where the employer permits the driver to use the machine to and from his home in order that the driver may reach his work earlier, it has been held that the relation of master and servant continues during such trips."

In *In re Hinton,* 180 N. C., 206 (213), *Walker, J.,* said: "Evidence of this kind was competent for the jury to consider, for when one can easily disprove a charge by testimony within his control, and which he can then produce, and fails to do it, it is some proof that he cannot refute the charge." In *York v. York,* 212 N. C., 695 (702), the above is quoted and it is there said: "The rule of the *Hinton case, supra,* has been repeatedly approved and followed in recent cases decided by this Court. See *Walker v. Walker,* 201 N. C., 183 (184); *Puckett v. Dyer,* 203 N. C., 684 (690); *Maxwell v. Distributing Co.,* 204 N. C., 309 (316)."

The charge of plaintiffs against defendant was to the effect that defendant's driver permanently injured them in the course of his employment by defendant. The record indicates that defendant, charged with this wrong, sat by while having an opportunity to refute the charge as to whether it was true or not; the truth or falsity was peculiarly within defendant's knowledge. The fact that he did not deny the wrong done by his driver was a "pregnant circumstance" for the jury to consider, as stated in opinion of this Court.

There is no denial that defendant's driver had the red pick-up truck, was employed to drive same, and habitually drove same with defendant's name on it. He had driven the truck for five years with the knowledge and consent of defendant, from where he worked to his home each night and return with same each morning. The evidence indicates that he was subject to call after the store was closed. The truck was parked each night at defendant's driver's home and there was no garage at the place of business for the truck except in the open. The main opinion says, "The same stars shine at both places," but they now shine on plaintiffs' broken bodies which have suffered injuries admittedly caused by defendant's driver while operating defendant's truck in a drunken condition.

The defendant furnished the gas to the driver to go to and from his work. The gas alone amounted to some $115.20. Some $23.00 a year— perhaps the larger part of a month's salary. The home of defendant's driver was six miles from the place of work. The accident to plaintiffs took place about halfway between the place of work and the driver's home, on the public highway. When the witness Johnson, introduced by plaintiff, was questioned on cross-examination, he would not deny *in toto* that the services of defendant's driver were not in the course of his employment. His final answer was, "I expect so," which implied an uncertainty as to whether the truck was being used as an accommodation to the defendant's driver. There was plenary evidence, direct and circumstantial, for the jury to consider.

In the Law of Automobiles (Michie), North Carolina, sec. 131, at p. 381, it is written: "The question as to whether the servant's or the employee's act may reasonably be held within the scope of his employment is ordinarily *one of fact for the determination of the jury,* except where the departure from the master's business is of marked and decided character." (Italics mine.)

I see no error in the ruling of the court below.